UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles KABBABY, a/k/a "Abdul", "The Arab", Defendant-Appellant.

No. 79–5333.

United States Court of Appeals,
Eleventh Circuit.

April 5, 1982.

Alan E. Weinstein, Miami Beach, Fla., for defendant-appellant.

Deborah Watson, Dept. of Justice, Appellate Section, Washington, D. C., for plaintiff-appellee.

Before RONEY and FAY, Circuit Judges, and EDENFIELD *, District Judge.

PER CURIAM:

Defendant Charles Kabbaby and eleven codefendants were charged in a sixteen-count indictment in the Southern District of Florida. The linchpin charges in the indictment were a RICO conspiracy,[1] which included all the defendants, and a substantive RICO offense,[2] which included Kabbaby and seven other codefendants. The predicate offenses for these crimes included contract murders, arson, distribution of narcotics and marijuana, counterfeiting twelve million dollars in United States Treasury bills, truck hijacking, loan sharking and massage parlor prostitution. Kabbaby was also indicted for conspiracy to distribute narcotics,[3] possessing with intent to distribute approximately 110.1 grams of cocaine on or about October 22, 1976,[4] possessing with intent to distribute 1.98 gram sample of cocaine in January 1977,[5] and using a telephone to facilitate his drug sales.[6]

After a trial which lasted six months and generated a 63-volume record, Kabbaby was acquitted of all charges except Count VIII, the so-called "October 22nd transaction," involving a sale of cocaine by defendant to Peter Bizzigotti, a paid informant. Kabbaby attacks that single count conviction for improper joinder and other trial errors. We affirm.

The relevant facts concerning Count VIII presented to the jury are as follows: On October 22, 1976, Drug Enforcement Agency (DEA) Agent Harris searched informant Peter Bizzigotti and Bizzigotti's car to confirm that the informant was carrying no drugs. Agent Harris and Bizzigotti then drove the car to a Winn Dixie grocery store. Defendant Kabbaby arrived shortly thereafter in his own automobile. Bizzigotti went to defendant's car, got in, and returned to his car a few minutes later carrying a McDonald's bag containing a plastic bag of cocaine. Agent Harris gave Bizzigotti $5,600 to pay for the cocaine. Kabba-

---

* The Honorable Newell Edenfield, U. S. District Judge for the North District of Georgia, sitting by designation. This case is being decided by a quorum due to the death of Judge Edenfield on December 27, 1981. 28 U.S.C.A. § 46(d).

1. 18 U.S.C.A. § 1962(d) (Count I).

2. 18 U.S.C.A. § 1962(c) (Count II).

3. 21 U.S.C.A. § 846 (Count V).

4. 21 U.S.C.A. § 841(a)(1) (Count VIII).

5. 21 U.S.C.A. § 841(a)(1)(Count IX).

6. 21 U.S.C.A. § 843(b) (Count XI).

by left his car and entered the Winn Dixie store. Bizzigotti followed. An agent observed the two meet in an aisle. Bizzigotti returned to his car to rejoin Agent Harris. The two drove to another location where Bizzigotti was again searched. The $5,600 was not found. Kabbaby's and Bizzigotti's fingerprints were on the McDonald's bag.

Defendant raises five issues on appeal.

### 1. Joinder and Refusal to Sever

Defendant contends it was improper under Rules 8 and 14, Fed.R.Crim.P., to join Count VIII with the other counts in the indictment.[7]

### RULE 8

Defendant argues that severance under Rule 8 was required because the record "as it pertains to the October 22nd transaction is totally devoid of any connection whatsoever to any other defendant or alleged co-conspirator in the case."[8]

■ Misjoinder under Rule 8 is prejudicial *per se* and if the limits of the rule are exceeded, severance is mandatory. *United States v. Levine*, 546 F.2d 658, 661 (5th Cir. 1977); *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978).[9] For purposes of a Rule 8(b) motion, allegations of an indictment will be accepted as true unless the joinder is based on an improper legal interpretation or there are allegations of prosecutorial bad faith. *United States v. Sutherland*, 656 F.2d 1181, 1190 n.6 (5th Cir. 1981);

*United States v. Leach*, 613 F.2d 1295, 1299 (5th Cir. 1980); *United States v. Lane*, 584 F.2d 60, 62 (5th Cir. 1978).

■ There being no alleged prosecutorial bad faith, defendant's argument addresses the propriety of the legal interpretation of the charge involved and its place in this indictment. We uphold the district court for two reasons. First, the indictment alleges the October 22nd transaction is a predicate offense to the Count II RICO charge. The reasoning of *United States v. Bright*, 630 F.2d 804 (5th Cir. 1980), controls this point. In *Bright*, as in this case, defendants were alleged to have committed different predicate crimes. Three defendants moved for severance under Rule 8, arguing misjoinder because the predicate crimes they had allegedly committed were unrelated to the activities of their codefendants. In upholding the district court's denial of the motion, the Fifth Circuit stated:

> [I]f this was not a RICO case, the defendants would have a valid argument of misjoinder. . . . The gist of a RICO offense, however, is that the defendant, through a pattern of predicate crimes, furthered a racketeering enterprise. The offense charged here is not the commission of the predicate crimes, but the furthering of the enterprise. . . . Thus viewed, it is clear the defendants were alleged to have participated in the same offense and joinder was not improper under Rule 8.

7. Defendant's numerous motions to sever Count VIII were denied. The district court did, however, grant a motion under Rule 8(a), Fed. R.Crim.P., to sever Count VI, which charged defendant with knowingly and intentionally possessing with intent to distribute "multi-kilogram quantities of marihuana" in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2. The motion was granted on the ground that it was "not part of the common scheme alleged in Counts I and II."

8. Rule 8, Fed.R.Crim.P., provides:

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same

act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

9. The Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit.

*United States v. Bright*, 630 F.2d at 812–13. Thus there is a logical, proper relationship between the transaction and the RICO charge in Count II.

■ Second, the October 22nd cocaine sale was also alleged as an overt act in furtherance of the conspiracy charges in Counts I and V. It is common and proper to allege overt acts as substantive violations and join them with conspiracy charges. *See, e.g., United States v. Wooldridge*, 572 F.2d 1027, 1029 (5th Cir.), *cert. denied*, 439 U.S. 849, 851, 99 S.Ct. 150, 155, 58 L.Ed.2d 151 (1978).

■ Contrary to defendant's argument, failure of the jury to convict him of participating in the broader conspiracy of which the October 22nd sale was a part does not require retroactive invalidation of the joinder. The exceptional circumstances found in other cases which justify examination of evidence adduced at trial in considering misjoinder claims are not present here. *See United States v. Levine*, 546 F.2d 658, 663 (5th Cir. 1977); *United States v. Zicree*, 605 F.2d 1381, 1387–88 (5th Cir. 1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980); *United States v. Nettles*, 570 F.2d 547, 551–52 (5th Cir. 1978). Only a single conspiracy was alleged, not several unrelated conspiracies. The Government's failure to prevail on the RICO counts or conspiracy at trial does not render joinder improper under Rule 8.

## RULE 14

Kabbaby argues that even if joinder was proper under Rule 8, the trial court erred in denying his motion to sever pursuant to Rule 14, Fed.R.Crim.P., which permits severance if it appears either party will be prejudiced by a joinder of offenses or defendants.[10]

■ The grant or denial of a Rule 14 motion lies within the sound discretion of the trial judge and is reversible only for abuse of that discretion. *United States v. Salomon*, 609 F.2d 1172, 1175 (5th Cir. 1980). To warrant severance under the rule, the defendant bears a heavy burden in demonstrating clear and compelling prejudice from the inclusion of the count in question "which could not be alleviated by the trial court and that he was unable to obtain a fair trial." *United States v. DeSimone*, 660 F.2d 532, 539 (5th Cir. 1981).

■ The test for determining whether compelling prejudice from continued joinder exists is

[W]hether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

\*　　\*　　\*　　\*　　\*　　\*

In determining on appeal whether the jury was in fact confused, the court will look to the verdict. Convictions will invariably be sustained if it may be inferred from the verdict that the jury "meticulously sifted the evidence," as where it acquits on certain counts.

*United States v. Zicree*, 605 F.2d at 1389, quoting *Tillman v. United States*, 406 F.2d 930, 935–36 (5th Cir. 1969), *vacated in part on other grounds*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

■ Defendant contends the evidence regarding the October 22nd transaction was very weak, and that he probably would not have been convicted if evidence relevant to other counts had not been before the jury. Severance under Rule 14 is not required merely because the defendant's chances for

---

**10.** Rule 14 provides in relevant part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information

or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .

acquittal would have been better if he had been tried in a separate trial on Count VIII. *United States v. Dennis*, 645 F.2d 517, 521 (5th Cir. 1981). It is true that "[o]ne of the hazards of a RICO count is that when the Government is unable to sustain a conviction under this statute, it will have to face the claim that the prejudicial effect of tarring a defendant with the label of 'racketeer' tainted the conviction on an otherwise valid count." *United States v. Guiliano*, 644 F.2d 85, 89 (2d Cir. 1981). Since defendant was acquitted on five of the six counts charged, however, it is clear that the jury "meticulously sifted the evidence," and that appellant was not prejudiced by a spillover of evidence relating to other counts or defendants. Consequently, we find the district court judge did not abuse his discretion in denying Kabbaby's motion under Rule 14.

### 2. *Admission of Sue Pill's Testimony*

Over objection, Sue Pill testified at trial she and her boyfriend Bobby Mix lived in Kabbaby's house for a few weeks in December 1975 and January 1976. She stated that on one occasion when codefendant LaPace visited, defendant gave a small amount of cocaine to her, Mix and LaPace for their personal use. She said LaPace liked the quality of the cocaine, and had asked if defendant could obtain more for him. Pill testified the defendant replied, "Not at the present time . . . [but] I'll try." Pill further testified that she saw an amount of cocaine under the egg tray of defendant's refrigerator and that he gave her the drug four times during the winter and spring of 1976. She stated that in May 1976 she overheard defendant and Mix discussing repairing defendant's boat, the "FREE." Once seaworthy, Pill testified, the FREE was to be used for marijuana shipments from Colombia. Finally, Pill stated defendant on occasion gave Mix cocaine for working on the boat.

Defendant repeatedly objected to Pill's testimony, arguing the testimony concerning his involvement with cocaine was inadmissible extrinsic offense evidence. The Government claimed initially the testimony was substantive evidence of "possession of cocaine by Silvi LaPace, Sam Cagnina and appellant, and related to discussions about outfitting the boat." The evidence was admitted without a limiting instruction. Subsequent motions to strike and for a limiting instruction were both denied on the ground that "[t]o seek to separate the incidents in which cocaine was used . . . would be very difficult if not impossible."

The Government does not now contend Pill's testimony was admissible as substantive evidence. Instead it argues the testimony was admissible as *res gestae* "in order to complete the story of the crime on trial and to place it in context," and as similar extrinsic offense evidence showing defendant knew he was delivering cocaine on October 22nd.

■ Regardless of the theory under which Pill's testimony was admitted, it is manifest that defendant suffered no improper prejudice for three reasons. *First,* there was other strong evidence to support the conviction. Government agents witnessed Bizzigotti talk to defendant and return with a bag of cocaine without the payment money. Defendant's fingerprints were on the bag containing the cocaine. Bizzigotti was searched before he met defendant and he gave the cocaine to Agent Harris before entering the supermarket. Defendant's claim that the informant obtained the cocaine from a person other than defendant and thereafter lied to the agent as to its source is highly unlikely. The Government's evidence was strong enough to obtain the conviction without the allegedly improperly admitted prejudicial testimony. *See United States v. Morisse*, 660 F.2d 132, 136 (5th Cir. 1981).

*Second*, as noted above, the jury acquitted defendant of five of the six counts, indicating the Pill testimony did not prejudicially infect its deliberations.

*Third*, viewed in context, Pill's testimony was unsensational. Kabbaby's trial lasted about six months and produced a 63-volume record. The jury was exposed to evidence of a large number of serious crimes includ-

ing contract murder, arson, prostitution and counterfeiting. Viewed in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), Pill's testimony is relatively mild when compared to the record as a whole.

Given the overwhelming evidence of guilt, the jury's separate consideration of the charges and the unsensational nature of Pill's testimony, we conclude the admission of Pill's testimony was at worst harmless error. The propriety of admitting the evidence is therefore irrelevant. *See United States v. Sandini*, 660 F.2d 544, 546 (5th Cir. 1981); *United States v. Heller*, 625 F.2d 594, 599 (5th Cir. 1980).

### 3. *Effect of Stricken Testimony*

■ Defendant also complains the trial court improperly allowed DEA Agent Castillo to testify regarding a sale of cocaine to him that was not charged in the indictment. The trial court granted defendant's motion to strike the testimony and instructed the jury to disregard it. Defendant claims on appeal the curative instruction compounded the error because the judge repeated the inadmissible evidence a second time. This contention is without merit. "It is an accepted maxim that juries are presumed to follow the instructions of the Court." *United States v. Vaughn*, 546 F.2d 47, 51 (5th Cir. 1977). That the jury followed the law is evidenced by defendant's acquittal on all counts to which Castillo's testimony was directed.

### 4. *Grand Jury Disclosures*

Because the Government presented to the indicting grand jury transcripts of testimony given an earlier grand jury that investigated but did not indict, defendant moved to dismiss the indictment, alleging a violation of Fed.R.Crim.P. 6(e). He contends the Government was required to obtain a court order authorizing the disclosure before presenting the information to the indicting grand jury.

■ Unauthorized disclosure of grand jury testimony justifies dismissal of

an indictment where there has been abuse of the grand jury process. *United States v. Malatesta*, 583 F.2d 748, 753 (5th Cir. 1978), *modified on other grounds*, 590 F.2d 1379 (5th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). Defendant has specified neither any improper prejudice nor any abuse of the grand jury resulting from the disclosure. Contrary to defendant's argument, the rule focuses on the integrity of the grand jury's own processes rather than the propriety of the Government's conduct. A review of the record reveals no abuse of the grand jury process in this case.

### 5. *Right to Impeach or Confront Nontestifying Informer*

■ Finally, Kabbaby appeals the district court's refusal to permit him to introduce informant Bizzigotti's conviction record. Relying on the rationale of *Park v. Huff*, 493 F.2d 923, 927 (5th Cir. 1974), *reversed on other grounds*, 506 F.2d 849 (5th Cir. 1975) (en banc), *cert. denied*, 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975), defendant argues Bizzigotti's conduct implied his guilt so he should have been permitted to introduce the impeaching conviction record.

Bizzigotti did not testify at trial and was not quoted at trial as a hearsay declarant. The only testimony regarding Bizzigotti was given by Agent Harris, who merely described the informant's actions during the October transaction. He "related no statements by the informer[ ] that might have been hearsay testimony." *United States v. Tatum*, 496 F.2d 1282, 1284 (5th Cir. 1974). *See also United States v. Gandara*, 586 F.2d 1156, 1158 (7th Cir. 1978) (agent who testified as to a narcotics transfer he observed was not describing "statement" of participants in transfer; rather, "he was testifying as to a fact within his own personal experience").

Although Fed.R.Evid. 801(a)(2) recognizes that "nonverbal conduct of a person, if it is intended by him/her as an assertion" can be a statement, the district court ruled, and we

agree, that there is no assertive conduct by Bizzigotti in the record which might be so considered. The district court therefore committed no reversible error in refusing to allow Bizzigotti's conviction record into evidence. In any event, defendant was allowed, over objection, to introduce testimony from a counselor at a Miami methadone maintenance program indicating Bizzigotti had been a drug addict for 15 years and that his reputation for telling the truth was poor. A psychiatrist testified that Bizzigotti lacked conscience, remorse, shame or guilt, and was manipulative, exploitative and responsive to suggestion. Therefore, even though Bizzigotti's conviction record was not allowed in evidence, defendant largely succeeded in attacking the informant's character.

Defendant asserts the Government's failure to call the informant to testify violated his Sixth Amendment right to confront an adverse witness. In rejecting a similar Sixth Amendment argument, the *Tatum* Court held "[t]he Government is under no duty to call witnesses even if they are informers." *United States v. Tatum*, 496 F.2d at 1284. *See also Shuler v. Wainwright*, 491 F.2d 1213, 1224 (5th Cir. 1974) ("The Confrontation Clause of the Sixth Amendment applies to evidence actually disclosed at trial and a defendant has no right to confront a 'witness' who provides no evidence at trial"). Defendant's rights under the Sixth Amendment's confrontation clause were not violated.

AFFIRMED.