[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12856
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cr-60002-WJZ-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS NAPOLIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 14, 2019)

Before TJOFLAT, JORDAN, and EDMONDSON, Circuit Judges.

PER CURIAM:

Luis Napolis appeals his convictions for conspiracy to possess with intent to distribute, and for possession with intent to distribute, 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), 846, and 18 U.S.C. § 2.  No reversible error has been shown; we affirm.

As part of an ongoing drug trafficking investigation, police used a confidential informant ("CI") to make controlled buys of cocaine from Alejandro Zamora (Napolis's nephew).  On 6 December 2017, the CI purchased a half kilogram of cocaine from Zamora at a home in Hollywood, Florida ("residence").

On 20 December 2017, the CI arranged to purchase one kilogram of cocaine from Zamora.  After Zamora let the CI know that the cocaine was ready to be picked up, the Sheriff's Office's SWAT team executed a search warrant on the residence.  When the SWAT team arrived, Zamora -- who was standing outside in the driveway -- ran to the front door, shouted "something" inside, and entered the residence.

When officers searched the residence, the only two people found inside were Zamora and Napolis.  Officers also discovered two ounces of cocaine in the master

2

bathroom and one kilogram of cocaine hidden in a covered shed area in the back yard.

Zamora and Napolis were each charged with conspiracy and with possession with intent to distribute cocaine. Zamora pleaded guilty pursuant to a written plea agreement. Napolis proceeded to trial, after which the jury found Napolis guilty. The district court sentenced Napolis -- who qualified as a career offender -- to 180 months' imprisonment.

I.

We first address Napolis's challenges to the district court's evidentiary rulings. We ordinarily review the district court's evidentiary rulings for abuse of discretion. United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003). When a party fails to object contemporaneously to a district court's evidentiary ruling, however, we review only for plain error. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). Under the plain-error standard, we will correct an error only if the defendant demonstrates that (1) an error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

3

Id. Errors affect a defendant's substantial rights "if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case." Id.

### A. Cross-Examination of Agent Edwards

Napolis argues that the district court violated the Sixth Amendment's Confrontation Clause by limiting Napolis's cross-examination of Agent Edwards about whether the CI had ever met or spoken with Napolis. On cross-examination, Napolis asked Agent Edwards whether the CI had told officers that he had met Napolis before. The district court sustained the government's hearsay objection. Napolis then sought to refresh Agent Edwards's recollection by showing him a document which was not identified on the record.[*] After Agent Edwards read the document, Napolis asked Agent Edwards again about whether the CI had ever met or seen Napolis. The district court sustained the government's objection based on hearsay.

Napolis later asked Agent Edwards about a recorded conversation between the CI and Zamora on 20 December during which Zamora said, "yeah, that's my

---

[*] On appeal, Napolis describes the document as an email -- on which Agent Edwards was copied -- that reported the CI as having told officers that he "had not met/seen" Napolis before.

4

uncle right there." Napolis again asked Agent Edwards about whether the CI "had said he had never spoken or met Mr. Luis Napolis." The district court sustained the government's hearsay objection.

Because Napolis raised no contemporaneous Sixth Amendment challenge to the district court's rulings, we review this issue only for plain error. See Turner, 474 F.3d at 1276; United States v. Charles, 722 F.3d 1319, 1322 (11th Cir. 2013) (we review for plain error Sixth Amendment Confrontation Clause claims raised for the first time on appeal).

The district court committed no plain error in sustaining the government's hearsay objections. First, the CI's alleged statements to officers about his dealings (or lack thereof) with Napolis constituted inadmissible hearsay. The CI's statements were out-of-court statements, made by a non-testifying declarant, and were being offered to prove the truth of the matter asserted: that the CI had not met or seen Napolis before 20 December. See Fed. R. Evid. 801.

Nor has Napolis demonstrated that the district court's rulings violated his constitutional rights. Under the Sixth Amendment's Confrontation Clause, "a defendant has no right to confront a 'witness' who provides no evidence at the trial." Shuler v. Wainwright, 491 F.2d 1213 (5th Cir. 1974). Because the CI neither testified at trial nor was quoted as a hearsay declarant, Napolis had no

5

constitutional right to confront the CI through his cross-examination of Agent Edwards.  See United States v. Kabbaby, 672 F.2d 857, 863-64 (11th Cir. 1982).

Napolis also cannot demonstrate that the challenged evidentiary rulings affected his substantial rights.  Officer Canales did testify that -- to his knowledge -- the CI had had no prior dealings with Napolis before 20 December 2017.  Agent Edwards and Officer Canales also testified that Napolis was not the target of the investigation and had no known involvement in the earlier drug transactions between the CI and Zamora.  Because the testimony Napolis sought to elicit from Agent Edwards would have been cumulative of other evidence already in the record, nothing evidences that the district court's evidentiary rulings impacted on the outcome of the proceedings.  See Turner, 474 F.3d at 1276.

B. Admission of 2015 Criminal Complaint

Napolis also argues -- and the government concedes -- that the district court abused its discretion by admitting into evidence a 2015 criminal complaint against Andres Zamora (Alejandro Zamora's brother).  On cross-examination, a defense witness testified that Andres Zamora (the witness's husband) had been convicted for a drug offense but that he never sold drugs from inside the residence.  The

6

government sought to impeach the witness's testimony by introducing into evidence the criminal complaint against Andres Zamora, which charged him with selling drugs from the residence.

"Evidentiary errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." United States v. Drury, 396 F.3d 1303, 1315 (11th Cir. 2005) (quotation omitted).

No reversal is demanded in this case. The 2015 criminal complaint was not pertinent to establishing the elements of the offenses with which Napolis was charged. Instead, the 2015 criminal complaint was introduced to impeach the credibility of a defense witness: a collateral matter. Moreover, the specific location (inside or outside the residence) from which Andres Zamora sold drugs in 2015 had no bearing on Napolis's involvement in the sale of drugs on 20 December 2017, particularly when cocaine was discovered hidden both inside and outside the residence. Sufficient independent evidence supports the jury's determination that Napolis was guilty of the charged offenses; no reasonable likelihood exists that the district court's evidentiary error influenced substantially the outcome of the case. See id.

7

Because Napolis has identified only one error, the cumulative error doctrine is inapplicable. See United States v. House, 684 F.3d 1173, 1210-11 (11th Cir. 2012) ("where there is no error or only a single error, there can be no cumulative error").

II.

Napolis also challenges the district court's denial of his motions for judgment of acquittal and for a new trial. Briefly stated, Napolis contends that the evidence was insufficient to permit the jury to find that he knew about Zamora's drug-trafficking activities, that he entered knowingly into an agreement with Zamora to traffic cocaine, that he participated in a conspiracy with Zamora, or that he possessed with intent to distribute the cocaine found at the residence. Napolis asserts, instead, that he was merely present as an overnight guest at the residence.

"We review de novo a district court's denial of judgment of acquittal on sufficiency of the evidence grounds." United States v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir. 2013). In determining the sufficiency of the evidence, "we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor." Id. We

8

cannot overturn a jury's verdict unless no "reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." Id.

Credibility questions are for the jury; we will assume that the jury answered questions of credibility in a way that supports the jury's verdict. United States v. Jiminez, 564 F.3d 1280, 1285 (11th Cir. 2009). Because the "jury is free to choose among reasonable constructions of the evidence," the government need not "disprove every reasonable hypothesis of innocence." United States v. Foster, 878 F.3d 1297, 1304 (11th Cir. 2018) (quotations omitted). "[W]hen the government relies on circumstantial evidence, the conviction must be supported by reasonable inferences, not mere speculation." Rodriguez, 732 F.3d at 1303.

To obtain a conviction for conspiracy to distribute cocaine, the government must prove (1) the existence of an agreement to distribute drugs; (2) that the defendant knew about the agreement; and (3) that the defendant participated knowingly in the illegal scheme. United States v. Matthews, 168 F.3d 1234, 1245 (11th Cir. 1999). A defendant's knowing participation in the conspiracy may be inferred from the "surrounding circumstances, such as acts committed by the defendant that furthered the purpose of the conspiracy." Id. "Although mere presence at the scene of a crime is insufficient to support a conspiracy conviction,

9

presence nonetheless is a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme." Id.

"To sustain a conviction for possession of a controlled substance with intent to distribute, the government must show that a defendant knowingly possessed the controlled substance with the intent to distribute it." United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005). Possession may be actual or constructive. Id. "Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion [or] control over the premises . . . in which the object is concealed." Id. "Intent to distribute may be inferred from the amount of the drug involved." Id. (alteration omitted).

A person who aids or abets the commission of an offense is punishable as a principal. 18 U.S.C. § 2. "[T]o prove that the defendant aided and abetted an offense, the government must establish that: (1) someone else committed the substantive offense, (2) the defendant committed an act that contributed to and furthered the offense; and (3) the defendant intended to aid in the commission of the offense." United States v. Cruickshank, 837 F.3d 1182, 1189 (11th Cir. 2016).

Viewed in the light most favorable to the government, the evidence presented at trial was sufficient to permit a reasonable factfinder to conclude

10

beyond a reasonable doubt that Napolis was guilty of both charged offenses. Zamora and Napolis were the only two people found at the residence at the time of the search. When SWAT arrived, Zamora ran to the front door and shouted "something" inside. Aerial surveillance confirmed that, shortly after SWAT arrived, a person (who could not have been Zamora) was seen moving in a covered shed area in the back yard and then entering the rear of the house. The kilogram of cocaine was later discovered hidden in the covered shed area. An officer involved in the search testified that Napolis was first seen in a bedroom in the rear of the home, near the door to the back yard.

The government also admitted a recording of a conversation between Zamora and Napolis after the two men were detained in the back of a police car. During the conversation, Napolis made inculpatory statements, including (1) that he had failed to dispose properly of the cocaine as instructed by Zamora; (2) that the CI was a "mole" who was cooperating with the police; (3) that "this . . . job went south;" and (4) asking Zamora "did they catch you inside or in the street?"

The evidence was sufficient to permit a jury to infer reasonably that an agreement existed between Zamora and Napolis to sell cocaine to the CI and that Napolis participated knowingly and voluntarily in the conspiracy.

11

Sufficient circumstantial evidence also existed from which the jury could infer reasonably that Napolis was guilty of possession with intent to distribute the cocaine. Evidence supports that Napolis exercised at least some level of dominion or control over the cocaine. Not only was Napolis an overnight guest at the residence, but sufficient evidence supports the inference that Napolis was also the person who hid the cocaine in the back yard. Napolis's intent to distribute may also be inferred reasonably based on the quantity of cocaine involved and based on Napolis's recorded statements to Zamora.

The evidence presented at trial was also sufficient to support a guilty verdict under an aiding-and-abetting theory. That Zamora intended to sell a kilogram of cocaine to the CI is clear. Given the evidence that Napolis hid that cocaine when the SWAT team arrived at the residence, a jury could conclude reasonably that Napolis was acting in furtherance of and intended to aid in the commission of the offense.

Because the evidence was sufficient to permit a jury to conclude reasonably that Napolis was guilty beyond a reasonable doubt, the district court committed no error in denying Napolis's motion for judgment of acquittal. The jury was free to disbelieve Napolis's theory that he was merely an overnight guest with no involvement in Zamora's drug trafficking.

12

Because the evidence supported the jury's verdict, the district court also abused no discretion in denying Napolis's motion for a new trial. <u>See Hernandez</u>, 433 F.3d at 1336-37 ("Motions for new trials based on the weight of the evidence are not favored" and will be granted only in "exceptional cases" where the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.").

AFFIRMED.