**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-13519

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

MARCUS D. FLINTROY,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cr-00008-MCR-1

————————————

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

A jury convicted Marcus Flintroy of federal drug and firearm crimes, and he was sentenced to thirty-five years in prison. Flintroy now appeals his conviction and sentence on six grounds. He

contends that: (1) the government acted outrageously while investigating his case; (2) the government committed a *Brady v. Maryland*, 373 U.S. 83 (1963), violation by withholding information about a confidential informant; (3) the government's decision not to call the informant at trial violated his rights under the Confrontation Clause; (4) the district court erred by giving an "aiding and abetting" jury instruction; (5) the district court erred by refusing to grant him a sentence reduction for accepting responsibility; and (6) his trial counsel rendered ineffective assistance. After careful consideration, we affirm.

## FACTUAL BACKGROUND

In late 2022, the Drug Enforcement Administration began investigating Marcus Flintroy for drug trafficking. The Administration arranged for a confidential informant to make two controlled purchases of fentanyl from Flintroy. Following standard procedure, the Administration searched the confidential informant before and after the transactions, outfitted him with a recording device, and monitored him while he met with Flintroy. The confidential informant returned with 28.3 grams of fentanyl after the first transaction, and 69.4 grams of fentanyl after the second.

The Administration allowed the confidential informant to drive to meet Flintroy despite knowing that he did not have a valid driver's license. After the first controlled purchase, the Administration also learned that the confidential informant had a state warrant out for his arrest. But the Administration continued to employ the

confidential informant to interact with Flintroy while it—unsuccessfully—attempted to have the warrant recalled.

In early 2023, law enforcement observed Flintroy driving an improperly tagged car without a driver's license. They followed Flintroy as he pulled into a gas station and parked. After the car parked, an unidentified man exited another vehicle and entered the passenger side of Flintroy's car. Suspecting that a drug sale was in progress, a law enforcement officer pulled behind Flintroy's car and activated his emergency lights. Flintroy immediately attempted to flee, crashing his car into two undercover police vehicles that had moved in to stop his escape. Both Flintroy and his passenger took off running. While the passenger made it back to his own vehicle and escaped, law enforcement found and arrested Flintroy.

The Administration searched Flintroy's abandoned car and found 99.9 grams of fentanyl, a loaded AR rifle, a loaded handgun with an extended magazine, and 182 rounds of ammunition. As a felon, Flintroy could not legally possess a firearm.

## PROCEDURAL HISTORY

Flintroy was charged (by superseding indictment) with five counts: two counts of distributing fentanyl, one count of possessing fentanyl with intent to distribute,[1] one count of possessing a firearm in furtherance of drug trafficking, and one count of

---

[1] This count also included an aiding and abetting allegation under 18 U.S.C. section 2.

possessing a firearm as a felon. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), 841(b)(1)(C); 18 U.S.C. §§ 922(g)(1), 924(a)(8), 924(c)(1)(A)(i).

### Pretrial Proceedings

A few weeks before trial, Flintroy submitted a pro se letter requesting the appointment of new counsel. He argued that his trial counsel did not have his best interests at heart and was not putting up a defense. The district court held a hearing on the letter, but Flintroy ultimately stated that he wished to proceed with his appointed attorney.

A few days before trial was scheduled to start, the government filed a trial brief and a list of proposed jury instructions. That list included the pattern jury instruction on aiding and abetting for the possession-of-fentanyl-with-intent-to-distribute count. Two days later, the district court held a change of plea hearing on the felon-in-possession-of-a-firearm count. But at the hearing Flintroy decided not to change his plea. Instead, Flintroy asked for the hearing to be treated as a pretrial conference and alerted the district court that he recently discovered the confidential informant involved in his case had a pending arrest warrant when the government had the informant buy fentanyl from Flintroy. Flintroy also learned that the government allowed the confidential informant to drive without a valid driver's license to and from the controlled purchases. Flintroy's counsel explained that Flintroy told him the confidential informant's "street name," and from that counsel deduced the informant's real identity through some "quick computer

research." Flintroy alleged that the government never provided the confidential informant's name in its pretrial disclosures.

The government contested that assertion and stated that it did not intend to call the confidential informant as a witness at trial. Further, the government argued Flintroy had long been aware of the confidential informant's identity. It provided a screenshot of one of Flintroy's text messages, where he identified the confidential informant by his legal name as the person who made the controlled purchases. Flintroy requested a trial continuance, which the district court denied. Still, the district court gave both sides a day to brief the issue. After reviewing that briefing, the district court continued the trial to let Flintroy file a motion to dismiss the superseding indictment.

Flintroy moved to dismiss the superseding indictment. He argued that the government had acted outrageously by (1) using a confidential informant who had an outstanding arrest warrant, and (2) allowing that informant to drive to make the controlled purchase without a valid license. Flintroy acknowledged that his motion may not be timely since the pretrial motion deadline passed, but he contended the motion should be accepted because the trial had been continued.

The district court denied Flintroy's motion to dismiss the superseding indictment for two reasons. First, the motion was untimely because the pretrial motion deadline had passed, and no extension was requested. The district court determined that Flintroy "was long aware of the identity" of the confidential informant, and

there was no reason the motion could not have been raised earlier. Second, the district court found that, timeliness aside, the alleged government conduct was not so outrageous as to warrant dismissal. The district court reasoned that the alleged unlawful conduct did not violate Flintroy's constitutional rights or impact his willingness to sell fentanyl.

*Trial*

Flintroy objected before trial, arguing that the government committed a *Brady* violation by failing to turn over information about the confidential informant. The district court overruled Flintroy's objection, and the case proceeded to a two-day trial. The government called nine witnesses: seven law enforcement officers who had been involved in the investigation and two chemical experts. Neither the government nor Flintroy called the confidential informant as a witness. One of the government's witnesses testified about the confidential informant, explaining his involvement, that he was paid, that he had an active warrant out for his arrest, and that he was permitted to drive without a valid driver's license. Flintroy did not testify.

On the second day of trial, the district court held a charge conference. Flintroy objected to the inclusion of an "aiding and abetting" instruction for the possession-of-fentanyl-with-intent-to-distribute count, but the district court overruled the objection and gave the instruction. The jury convicted Flintroy on all charges.

*Sentence Proceeding*

The probation office prepared a presentence investigation report, calculating Flintroy's offense level at thirty-seven and his criminal history category at six. This set Flintroy's guideline sentence range between 420 months and life imprisonment. The report did not include a reduction for accepting responsibility. Flintroy objected to the report, arguing that he should receive an offense level reduction for accepting responsibility. The district court overruled his objection because he took his case to trial.[2]

Flintroy spoke, stating that the district court had been "deprived of the right to be fair and impartial" because aspects of his case were not presented at trial. The district court adjudicated Flintroy guilty on all counts, incorporated the presentence investigation report into his sentence, and imposed a bottom of the guidelines sentence of 420 months' imprisonment followed by eight years of supervised release. Flintroy appeals his convictions and sentence.

## DISCUSSION

Flintroy raises six arguments on appeal. First, he contends that the district court should have dismissed the superseding indictment because the government acted outrageously while investigating his case. Second, he asserts that the government committed a *Brady* violation by withholding information about the confidential

---

[2] The district court did not explicitly overrule the objection, but it implicitly overruled it by declining to reduce Flintroy's guideline range.

informant. Third, he argues that the government's decision not to call the informant at trial violated his rights under the Confrontation Clause. Fourth, he contends that the district court erred by giving an "aiding and abetting" jury instruction. Fifth, he argues that the district court erred by refusing to grant him a sentence reduction for accepting responsibility. And sixth, while he asserts an ineffective-assistance-of-counsel claim, he asks that we decline to review it at this time. We address each of his arguments in turn.

### Outrageous Government Conduct

We review de novo the denial of a motion to dismiss an indictment based on claims of outrageous government conduct. *United States v. Castaneda*, 997 F.3d 1318, 1325 (11th Cir. 2021). In doing so, we examine the district court's fact-findings for clear error. *Id.* "Clear error arises when our review of the record leaves us with the definite and firm conviction that a mistake has been committed." *United States v. Gbenedio*, 95 F.4th 1319, 1328 (11th Cir. 2024) (citation and internal quotation marks omitted).

The outrageous government conduct defense "focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition." *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998). It presumes that if the government uses law enforcement techniques that are shocking and fundamentally unfair, then it should not be permitted to obtain a conviction from those techniques. *See Castaneda*, 997 F.3d at 1324 (citation omitted).

To show outrageous government conduct, a defendant must demonstrate that the government's techniques violated "fundamental fairness" to the point that they were "shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." *United States v. Cannon*, 987 F.3d 924, 941 (11th Cir. 2021); *see also United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007). Further, "the actionable government misconduct must relate to the defendant's underlying or charged criminal acts." *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011). Whether government conduct is outrageous "turns upon the totality of the circumstances with no single factor controlling," and the defense "can only be invoked in the rarest and most outrageous circumstances." *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984) (citation omitted). Neither we, nor the Supreme Court, have ever found the outrageous government conduct defense to apply, and we have never barred a prosecution based on it. *Castaneda*, 997 F.3d at 1324.

Here, the district court did not err by denying Flintroy's motion to dismiss the superseding indictment based on outrageous government conduct. To start, the district court based its ruling on two grounds: first, timeliness, and second, the merits. Flintroy only challenges the second ground on appeal. But "to obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680 (11th Cir. 2014). Because Flintroy does not challenge the district court's conclusion that his

motion was untimely, "he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Id.*

Even considering the merits, the government's conduct in Flintroy's case was not "so outrageous that it [was] fundamentally unfair." *Ciszkowski*, 492 F.3d at 1270. Flintroy argues the government acted outrageously by (1) using a confidential informant that had an outstanding arrest warrant, and (2) allowing the informant to drive without a valid driver's license. But neither of these actions affected Flintroy's Fifth Amendment due process rights, or his predisposition to sell fentanyl. *See Jayyousi*, 657 F.3d at 1111; *Cannon*, 987 F.3d at 942 ("Merely presenting defendants with a non-unique opportunity to commit a crime, of which they are more than willing to take advantage, does not amount to outrageous government conduct."). Further, the government's conduct was not so "shocking to the universal sense of justice" as to be outrageous. *Cannon*, 987 F.3d at 941. While the government chose to use the confidential informant, it was working to have the informant's arrest warrant recalled. And although the government allowed the confidential informant to drive a short distance to meet Flintroy, it closely watched him as he did so.

In short, Flintroy has not shown that the district court erred by denying his motion to dismiss the superseding indictment based on his allegations of outrageous government conduct.

*Brady Violation*

Flintroy's second argument on appeal is that the government committed a *Brady* violation by failing to timely disclose information about the confidential informant.  We review allegations of a *Brady* violation de novo, placing the burden on the defendant to show the required elements.  *United States v. Melgen*, 967 F.3d 1250, 1264 (11th Cir. 2020).

The Supreme Court established in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  To show a *Brady* violation, a defendant must demonstrate that:  (1) the government possessed evidence favorable to him; (2) he did not possess the evidence, and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) if the evidence had been disclosed, there is a reasonable probability that the outcome of the trial would have been different.  *See United States v. Stahlman*, 934 F.3d 1199, 1229 (11th Cir. 2019).

Flintroy has not shown either the second or fourth required elements.  First, the record is clear that Flintroy knew the confidential informant's identity and could have obtained the other information about him with reasonable diligence.  The government produced a text message Flintroy sent several months before his trial in which he identified the confidential informant (by his legal name) as the person who had worked with the government against

him.   Later, Flintroy's counsel explained that upon learning the confidential informant's "street name" from Flintroy, he deduced the informant's real identity through some "quick computer research."   With the confidential informant's identity in hand, Flintroy's counsel discovered that the informant had an outstanding arrest warrant and suspended driver's license at the time of the controlled transactions.  Because Flintroy knew the confidential informant's identity and could have discovered the other information with reasonable diligence, he cannot show a *Brady* violation. *Id.*

Additionally, all the information about the confidential informant—except his real identity—came out at trial.  The government's witnesses testified that they employed a confidential informant who was subject to an arrest warrant and allowed him to drive without a valid driver's license.  Despite this, the jury convicted Flintroy.  Thus, even if the government had disclosed this information to Flintroy weeks before trial, the outcome of the trial would have remained the same.  *See id.*

Altogether, the record does not support Flintroy's *Brady* claim.[3]

---

[3] To the extent that Flintroy attempts to add a *Giglio* claim for the first time on appeal, that claim also fails.  *See Giglio v. United States*, 405 U.S. 150 (1972).  "In order to succeed on a *Giglio* challenge, the defendant must demonstrate that the prosecutor 'knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material.'" *United States v. Vallejo*, 297 F.3d 1154, 1163–64 (11th Cir. 2002) (citation

23-13519                Opinion of the Court                13

*Confrontation Clause*

Flintroy argues that the government violated the Sixth Amendment's Confrontation Clause by declining to call the confidential informant at trial. He insists that the confidential informant was a key witness whom Flintroy should have been able to cross-examine. Flintroy acknowledges that he did not make an objection based on the Confrontation Clause below.[4]

Constitutional objections raised for the first time on appeal are reviewed only for plain error. *United States v. Moriarty*, 429 F.3d 1012, 1018-19 (11th Cir. 2005); *see also United States v. Arbolaez*, 450 F.3d 1283 (11th Cir. 2006) (reviewing a Confrontation Clause claim first raised on appeal for plain error). Plain error occurs when "(1) there was error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010) (citation

omitted). Flintroy does not argue that the government presented any false testimony at trial.

[4] Flintroy argues that while he did not specifically raise the Confrontation Clause below, his various objections throughout trial were collectively enough to preserve the issue. We disagree. *See United States v. Chau*, 426 F.3d 1318, 1321–22 (11th Cir. 2005) (holding that the defendant's hearsay objections did not preserve the Confrontation Clause issue); *see also United States v. Luciano*, 414 F.3d 174, 178 (1st Cir. 2005) ("As Luciano did not raise this Confrontation Clause or *Crawford*-type claim in the proceedings below—defense objections were framed as hearsay and reliability objections—we review for plain error.").

omitted).  "When neither [our] Court nor the Supreme Court have resolved an issue, there can be no plain error in regard to that issue." *United States v. Vereen*, 920 F.3d 1300, 1312 (11th Cir. 2019).

Flintroy has not shown error, let alone plain error.[5] The Sixth Amendment's Confrontation Clause "protects a defendant's right of cross-examination by limiting the prosecution's ability to introduce statements made by people not in the courtroom." *Smith v. Arizona*, 602 U.S. 779, 783 (2024).  It prohibits the introduction of "testimonial statements" made by an absent witness unless the witness is both unavailable to testify and the defendant previously had an opportunity to cross-examine the witness.  *Id.*  The "Confrontation Clause's requirements apply *only* when the prosecution uses out-of-court statements for 'the truth of the matter asserted.'"  *Id.* (emphasis added) (citation omitted).

---

[5] To the extent that Flintroy argues that he was denied compulsory service of process because the confidential informant became a fugitive before trial, he has not shown (1) that he ever attempted to subpoena the confidential informant, (2) that the government acted in bad faith, or (3) that the confidential informant's testimony would have been materially favorable to him.  *See Beach v. Blackburn*, 631 F.2d 1168, 1171 (5th Cir. 1980) (finding a defendant's allegation that he "was denied the right to compulsory process" without merit because he made no allegation "that he sought to subpoena" the witness); *United States v. De La Cruz Suarez*, 601 F.3d 1202 (11th Cir. 2010) ("To show a violation of his due process rights or compulsory process rights, [appellant] is required to show that there was a reasonable basis to believe that the testimony would be material and favorable to him, and that the government had acted in bad faith.").

Flintroy does not point to any "testimonial statement" made by the confidential informant. Instead, he argues that his Confrontation Clause rights were violated because the government declined to call the confidential informant as a witness.[6] But the Confrontation Clause does not require the government to call a witness if it does not introduce any testimonial statements from that witness. *See id.* Flintroy cites no authority to support his assertion that the government was required to call the confidential informant as a witness, and indeed, our precedent indicates that it was not. *See United States v. Kabbaby*, 672 F.2d 857, 864 (11th Cir. 1982) ("[T]he [g]overnment is under no duty to call witnesses even if they are informers.") (citation omitted); *Shuler v. Wainwright*, 491 F.2d 1213, 1224 (5th Cir. 1974) ("The Confrontation Clause of the Sixth Amendment applies to evidence actually disclosed at trial and a defendant has no right to confront a 'witness' who provides no evidence at trial.").

In sum, Flintroy has not shown a violation of the Confrontation Clause.

---

[6] To the extent that Flintroy attacks the credibility of the law enforcement officers' testimony, or the sufficiency of the evidence underlying his conviction, he has not properly raised those claims on appeal. Thus, we decline to consider them. *See United States v. Cooper*, 203 F.3d 1279, 1285 n.4 (11th Cir. 2000) (declining to consider a sufficiency of the evidence claim not properly raised on appeal).

*"Aiding and Abetting" Jury Instruction*

Flintroy next argues that the district court erred when it granted the government's request for an "aiding and abetting" jury instruction as to the possession-of-fentanyl-with-intent-to-distribute count of the superseding indictment.

We review a district court's decision to give a jury instruction for abuse of discretion. *Rubinstein v. Yehuda*, 38 F.4th 982, 992 (11th Cir. 2022). "A district court abuses its discretion if it 'applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous.'" *Gbenedio*, 95 F.4th at 1327 (citation omitted). This is a "deferential standard of review" and "we will only reverse if we are left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." *United States v. Anderson*, 1 F.4th 1244, 1260 (11th Cir. 2021) (citation omitted).

Flintroy asserts that the jury instruction was improper because aiding and abetting is a separate crime that was not charged in the superseding indictment. He contends that its inclusion in the jury instructions "constituted undue surprise" and prejudicial harm by restricting his ability to argue "that there might have been another person with, by or in charge of the drugs." But Flintroy's contentions are belied by the record. The superseding indictment did charge Flintroy with aiding and abetting under the possession-of-fentanyl-with-intent-to-distribute count. *See* 18 U.S.C. § 2 (penalizing aiding and abetting the commission of a federal crime). And the jury instruction was limited to that count.

23-13519                    Opinion of the Court                        17

Nor could Flintroy have been unduly surprised by the instruction. The government first filed its proposed jury instructions—which included the aiding and abetting instruction—more than a month before Flintroy's trial. And at the charge conference, Flintroy objected to the instruction's inclusion, so he had both notice and an opportunity to be heard on the issue. *See* Fed. R. Civ. P. 51(b) (requiring a district court to inform parties of proposed jury instructions before trial and allow the opportunity to object). Thus, Flintroy has not shown that the district court abused its discretion by including the aiding and abetting jury instruction.

*Acceptance of Responsibility Sentencing Reduction*

Flintroy contends that the district court erred by denying his request for a sentence reduction based on acceptance of responsibility. The sentencing guidelines provide for a two-level reduction in a defendant's offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The reduction "is intended to reward those defendants who affirmatively acknowledge their crimes and express genuine remorse for the harm caused by their actions." *United States v. Carroll*, 6 F.3d 735, 740 (11th Cir. 1993).

"Denials of a sentenc[e] reduction for acceptance of responsibility—findings entitled to 'great deference'—are reviewed for clear error." *United States v. Smith*, 22 F.4th 1236, 1242 (11th Cir. 2022) (citation omitted). We will not overturn a "district court's determination that a defendant is not entitled to acceptance of responsibility" unless "the facts in the record clearly establish that

[the] defendant has accepted personal responsibility" for his crimes. *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999).

Flintroy essentially argues that he accepted responsibility by almost pleading guilty to one of the charges. He asserts that the "withdrawal from his proposed guilty plea" was not his own doing and was owed "to events far beyond his control involving claims of [g]overnment misconduct and the advice of counsel." Flintroy points to the sentencing guideline commentary, which states that in "rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial." U.S.S.G. § 3E1.1, cmt. n.2.

But Flintroy's case is not one of the "rare situations" the commentary is referring to. *Id.* Those are circumstances where, for example, "a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." *Id.* However, Flintroy's trial concerned his factual guilt, and thus, he was not entitled to the reduction. *See id.* ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.").

Further, Flintroy's canceled change-of-plea hearing involved only one count of the superseding indictment, and the record does not suggest that he ever came close to pleading guilty to any of the other four counts. Instead, Flintroy chose to put the government to its burden on all his charges at trial. Nor did he express any

acceptance of responsibility at the sentence proceeding. Rather, Flintroy told the district court that it was "deprived of the right to be fair and impartial" because "critical aspects" of his case were not presented at trial. He asserted that the district court "only saw one side of the hand in this case," and "didn't get to see the other." Flintroy offered no remorse, instead maintaining that the district court did not know what was "really going on" with his case.

In short, Flintroy has not shown that the district court clearly erred by declining to reduce his sentence for acceptance of responsibility.

### Ineffective Assistance of Counsel

"We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) (citation omitted). "The preferred means for deciding" these claims "is through a 28 U.S.C. [section] 2255 motion[,] 'even if the record contains some indication of deficiencies in counsel's performance.'" *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (citation omitted).

Here, both parties argue that the record is not sufficiently developed to consider Flintroy's ineffective-assistance-of-counsel claim on direct appeal. We agree. Thus, we decline to consider Flintroy's ineffective-assistance-of-counsel claim. *See id.* at 1329 (declining to consider ineffective-assistance-of-counsel claim on undeveloped record).

20                     Opinion of the Court                     23-13519

## CONCLUSION

Because Flintroy has not shown any error requiring the reversal of his convictions or sentence, we affirm.

**AFFIRMED**.