[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 17-14387, 18-12866

_____

D.C. Docket No. 6:17-cr-00045-CEM-DCI-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN DAVID STAHLMAN,

Defendant-Appellant.


_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(August 19, 2019)

Before JORDAN, GRANT and HULL, Circuit Judges.

HULL, Circuit Judge:

After a jury trial, John David Stahlman appeals his conviction and 292-

month sentence for attempting to entice a minor to engage in sexual activity.  On

appeal, Stahlman argues that the district court erred: (1) in excluding the testimony

of his proposed expert, Dr. Chris Carr; (2) in admitting the case agent's lay opinion testimony and in denying Stahlman's motion for a mistrial on that ground; (3) in denying his motions for judgment of acquittal; (4) in imposing a sentencing enhancement for obstruction of justice; and (5) in denying his post-trial motion for a new trial. After review, and with the benefit of oral argument, we affirm.

We begin by recounting the trial evidence about Stahlman's offense conduct, next review the procedural history, and then address Stahlman's claims in turn.

## I. FACTUAL BACKGROUND

After two months of sordid email exchanges with a father who was offering his 11-year-old daughter for sex, Stahlman drove to a parking lot to meet up and live out his self-described "daddy/daughter fantasy." Unfortunately for Stahlman, the "father" was an undercover agent with the Federal Bureau of Investigation ("FBI"), and the "daughter" did not exist. At trial, Stahlman testified and told the jury that he believed all along that he was acting out a role-playing sexual game with other adults—that he never intended to have sex with an <u>actual</u> minor, just an adult <u>pretending</u> to be a minor. The jury found him guilty.

Stahlman's sordid conduct began on November 10, 2016, when he posted an ad on the "Casual Encounters" section of the "Personals" page on Craigslist entitled "Daddy/daughter fantasy," with a picture of girl laying on a bed wearing only underwear and a camisole. In the ad, Stahlman wrote: "I am a married white

2

guy looking for a young 'looking' girl to play out some fantasies with me."

Stahlman added: "I have a daughter but wouldn't dare defile her.  So I'd like to

chat at first to fill this need, and maybe, just maybe move to physical pleasure."

Stahlman closed the ad by requesting that interested persons contact him via email

or the instant messaging application Kik and stating, "Hope to hear from you,

honey."

On November 16, 2016, Special Agent Rodney Hyre came across

Stahlman's Craigslist ad while working in an undercover capacity to identify

persons who might be trying to sexually exploit children.  Agent Hyre is the

coordinator of the FBI's Violent Crimes Against Children Task Force.  Agent Hyre

estimated the age of the girl pictured in Stahlman's ad to be between 10 and 12

years' old and suspected from "the nature of the advertisement" that Stahlman

might be someone who was "attempting to find a child to sexually exploit."

Responding to the ad, Agent Hyre began an undercover conversation with

Stahlman.  The conversation lasted from mid-November 2016 through the end of

January 2017.  During that time, Stahlman and Agent Hyre exchanged 125 emails

and 22 Kik messages discussing plans for Stahlman to meet and engage in sexual

activity with Hyre's fictional 11-year-old daughter.

In his initial response to Stahlman's post, Agent Hyre stated he was a

straight, single father of an 11-year-old daughter.  Hyre indicated that he felt "the

3

same way" Stahlman did and said "HMU [hit me up] if this interests you."

Stahlman quickly responded: "Defin[i]tely interested.  Depends on what you want

to do?"  Agent Hyre asked about Stahlman's daughter.  Stahlman responded that

she was nine years' old and reiterated that he "wouldn't defile [his] little girl," but

said, "I think I would play with someone else's."[1]  In another email, however,

Stahlman stated that he fantasized about his own daughter "[i]n the right

moments[,] when she is changing and I catch a glimpse or when we are tickle

fighting and hands go places."  Agent Hyre explained that, in this context "tickle

fighting" or the "tickle game" meant "where people interested in children this way

will pretend they're tickling the child to make them laugh, and they will let their

hands drift into inappropriate places on the child to test the boundaries of the

child."

As the conversation progressed, Agent Hyre indicated to Stahlman that his

11-year-old daughter had engaged in sexual activities with other adult men before.

Stahlman stated that he "would like to act out [his] fantasies" and would like to

"play" with Hyre's 11-year-old.  Stahlman asked Agent Hyre: "So what would I

have to do to . . . 'qualify' myself the opportunity to meet your lovely little lady?"

---

[1]After he arrested Stahlman, Agent Hyre discovered that Stahlman in fact did not have a nine-year-old daughter.

4

Agent Hyre replied that Stahlman would "have to be okay with me watching," and Stahlman agreed that he would be "totally ok" with that.

Over the course of their conversations, Stahlman made several statements describing the types of sexual activities he would like to engage in with Agent Hyre's 11-year-old daughter. Among other things, Stahlman stated: "I just envisioned licking your daughter's pussy as she slept and you filming it"; "I'd defin[i]tely want to eat her pussy and watch her suck my cock. I'd probably want to eat her little ass too"; "[I]f it led to sex I'd be cool with that too but I'm for sure into oral play"; "I would like to see her undress, or undress her myself and just kiss and play. Maybe do a little oral on eachother. Then see where it leads"; "I think I would want sex, maybe even anal"; "[C]ould her and I start with a shower[?]"; and "We could explore eachother's bodies and it not be all that sexual. Then be all clean for the fun part." Stahlman also asked Agent Hyre for pictures of his 11-year-old, and Agent Hyre sent him a picture of a fellow law enforcement officer when she was 12 or 13. Stahlman commented that she was "a little older than [he] pictured, which is quite alright," and that "she looks very cute and sexy."

Stahlman attempted to set up a meeting with Agent Hyre and his 11-year-old in mid-November while Stahlman's wife was supposed to be out of town, but the plan was cancelled when Stahlman's wife insisted that he travel with her. A bit later in November, Stahlman again discussed plans to meet Agent Hyre's 11-year-

5

old, but that plan likewise fell through when Stahlman was unable to get away from his wife. In early December 2016, Agent Hyre reached out to Stahlman again and asked, "Hey man you still interested in playing or should I delete you?" Stahlman replied: "Go ahead and delete me. My availability has just dwindled lately. It's probably not gonna happen. Thanks for the opportunity." When Agent Hyre inquired whether Stahlman might "want to later" or had "just changed [his] mind about the whole thing," Stahlman replied that he had not changed his mind, but could not find the time to set up a meeting.

The conversation between Stahlman and Agent Hyre lapsed through the rest of December 2016 and into January 2017, but picked back up when Agent Hyre contacted Stahlman again in late January. In a January 23, 2017 email, Agent Hyre stated: "Last we talked you said you hadnt changed your mind[.] Just couldnt find the time, that still true[?]" Stahlman confirmed "that's still true," then asked "Are you two free a week from now? Next Monday?" Agent Hyre responded that he and his daughter would be available, and over the next few days, Hyre and Stahlman made plans for their meeting.

Ultimately, they decided to meet at 8:30 a.m. on Monday, January 30, 2017 in the parking lot of a Gander Mountain sporting goods store in Lake Mary, Florida. Agent Hyre proposed that the two men meet each other first, then go to meet Agent Hyre's 11-year-old, and Stahlman agreed. Stahlman told Agent Hyre

6

he would be driving a "[w]hite VW." Among other things, Stahlman asked Agent Hyre multiple times whether he should bring condoms, whether he could shower with Agent Hyre's daughter before engaging in sexual activity with her, whether she "like[d] kissing," and whether Agent Hyre would be filming or taking pictures of their activities. On the day before the meeting, Stahlman told Agent Hyre "I am really looking forward to Monday," and "I can't wait." On the morning of January 30, 2017, about an hour before they were scheduled to meet, Stahlman emailed: "Tik Tock. It's almost time."

The morning of their scheduled meeting, January 30, 2017, Stahlman drove to the Gander Mountain parking lot in Lake Mary from his home in Longwood, Florida. Stahlman arrived at approximately 8:25 a.m. in his white VW, wearing a green Teenage Mutant Ninja Turtles t-shirt. Stahlman exited his vehicle and approached the undercover agent (not Agent Hyre) who was playing the role of the father of the 11-year-old. At that point, Agent Hyre, who was watching from a surveillance vehicle, approached and arrested Stahlman.

Stahlman waived his Miranda rights and agreed to speak with Agent Hyre and another agent, Kevin Kaufman. During the interview, Stahlman admitted that he was in a conversation for the last two-and-a-half months with the father of an 11-year-old and that conversation was about Stahlman's engaging in sex with the 11-year-old. Stahlman told Agent Hyre that he "knew that he could get arrested,

7

he knew that this could have been a sting, but he came to the parking lot anyway."
At one point during the interview, Stahlman told Agent Hyre that he "was there to
have sex with [Hyre's] wife," but later conceded that they had never "talked about
an adult woman a single time" and that there had been no mention of a wife or
other adult.  Agent Hyre also noted that he had told Stahlman he did not need to
bring condoms because the 11-year-old was too young to get pregnant, and
Stahlman acknowledged that he "showed up without condoms because he believed
he was showing up for an eleven-year-old."  Stahlman also told Agent Hyre,
however, that he was expecting to meet an adult portraying a minor and referred to
their conversation as a "fantasy façade."

## II. PROCEDURAL HISTORY

In 2017, a federal grand jury charged Stahlman with one count of attempting
to persuade, induce, and entice a minor to engage in sexual activity, in violation of
18 U.S.C. § 2422(b).  Stahlman pled not guilty and proceeded to trial.

### A.    Dr. Carr's Testimony

Prior to trial, Stahlman gave notice of his intent to present the testimony of
psychologist Dr. Chris Carr, Ph.D., as an expert witness.  Stahlman sought to
introduce Dr. Carr's testimony to "provide the proper context to Mr. Stahlman's
fantasy ad and his subsequent communications."  Specifically, Dr. Carr would
"opine that Mr. Stahlman's online communications at issue in this case, along with

8

Mr. Stahlman's history of sexual behavior, is consistent with a person attempting to act out a fantasy rather than attempting sexual contact with an actual minor."

The government filed a motion in limine to exclude Dr. Carr's testimony, arguing that his testimony: would impermissibly give an opinion on Stahlman's intent, in violation of Federal Rule of Evidence 704(b); was not proper expert testimony under Rule 702; was not relevant under Rule 401; and should be excluded under Rule 403 because it carried an undue risk of misleading the jury.

Stahlman responded that: Dr. Carr's testimony was necessary to ensure his right to present a defense; that Dr. Carr was qualified to provide expert testimony based on his professional training and experience; that other courts have admitted expert testimony similar to Dr. Carr's; that Dr. Carr's testimony would help the jury understand the concept of internet-based sexual fantasy; and that Dr. Carr's testimony would not violate Rule 704(b).

The district court held an evidentiary hearing on the government's motion to exclude Dr. Carr's testimony.  At the hearing, Dr. Carr testified that he was a licensed psychologist since 1994, worked as a forensic psychologist for his entire career, and focused on evaluating people who had committed sex offenses. Dr. Carr previously worked for the Florida Department of Corrections for six years.  Since 2003, Dr. Carr worked for the State of Florida as a member of the Department of Children and Families Sexually Violent Predator Program.  As part

of that program, Dr. Carr conducted evaluations of the "highest risk" sexual offenders to determine whether they should be civilly committed after completing their prison terms.

Dr. Carr met with Stahlman in March 2017 and conducted a diagnostic interview. As part of his evaluation, Dr. Carr took Stahlman's "psychosocial and psychosexual history," reviewed Stahlman's Craigslist ad and conversations with Agent Hyre, and consulted relevant journal articles. Dr. Carr believed Stahlman was "open" and truthful during their interview and provided "abundant information" to inform his diagnosis. Dr. Carr diagnosed Stahlman with moderate adjustment disorder with anxiety and "other specified sexual dysfunction," which Dr. Carr described as "qualified bisexual preoccupation and sexual fantasy online."

Dr. Carr opined that, in this case, Stahlman "was engaged in role-playing and fantasy role-play." Dr. Carr based this opinion on Stahlman's history, the Craigslist ad and emails, the DSM-V, and "research articles about this type of phenomena." In particular, Dr. Carr relied on two articles, "Typing, Doing and Being: Sexuality and the Internet," and "The Online Disinhibition Effect," which Dr. Carr stated were peer-reviewed and written by authors who are experienced and well-respected in this area.

Dr. Carr explained that there is a difference between a desire to engage in role-play and a desire actually to engage in sexual activity with a minor. Dr. Carr

10

elaborated that, with a daddy-daughter fantasy for example, there are two ways of seeking that out. One way "is to go to child pornography sites [where] you would find that kind of thing." The other would be to act out the fantasy with other adults. Dr. Carr opined that, with "people who have sexual interest in a child, it's about the child's body, whereas with adults acting out these types of fantasies, it's more about the psychological dynamics involved." In other words, in the fantasy context, "your sexual interest is in adults playing certain roles."

On cross-examination, Dr. Carr acknowledged that he had never published any academic papers or conducted research or studies on the online disinhibition effect, cybersexuality, fantasy, or role-play. Dr. Carr's interview with Stahlman lasted between one-and-a-half and three hours, and he did not meet with Stahlman a second time. Dr. Carr did not speak to Stahlman's wife, ex-wife, prior sexual partners, or children. Dr. Carr did not review Stahlman's National Guard service records or other employment records.

Dr. Carr further testified that Stahlman told him during their interview that he had watched videos simulating sex between a father and minor daughter with adults playing the parts. Dr. Carr asked Stahlman whether he ever had an interest in children, and Stahlman "did not express an interest in children." However, Stahlman also told Carr that he had read and masturbated to erotic stories involving adults and children, including stories on a website called Asstr.org, but Stahlman

11

denied ever masturbating to pictures of children.  Dr. Carr conducted a Static-99

test[2] of Stahlman and considered the results of a polygraph test in evaluating

Stahlman, but did not conduct any other psychosocial or sexual tests.

On redirect, Dr. Carr testified that he learned, after his interview with

Stahlman, that no child pornography was found on Stahlman's phone, but the

phone had evidence "of these daddy-daughter role-plays without any children, with

adults acting in that."  Dr. Carr opined that this was "consistent with [his]

findings."

The district court took the motion under advisement.  On the first day of

trial, the district court granted the government's motion to exclude Dr. Carr's

testimony.  The district court determined that Dr. Carr's methodology was

unreliable, his testimony would not assist the jury, and his testimony would violate

Rule 704(b).  The district court explained its decision as follows:

> In the Court's view, Dr. Carr seeks to tell the jury that defendant was
> only role-playing and therefore lacked the requisite intent to commit
> the offense.
>
> To state the Court's finding in the context of the Eleventh Circuit's
> Daubert analysis:
>
> One, Dr. Carr is a qualified psychologist;
>
> Two, what little is known of Dr. Carr's methodology is to this Court
> unreliable; and,

---

[2]The Static-99 test is an assessment tool used for sex offender risk assessment in adult male sex offenders.

Three, Dr. Carr's testimony falls well short of assisting the trier of fact.

Dr. Carr's ultimate opinion invades the province of the jury as he seeks to substitute his judgment for the jury's, in violation of Federal Rule of Evidence 704(b).

## B.    Agent Hyre's Testimony

As the government's first witness at trial, Agent Hyre testified that he had been an FBI agent for 16 years and currently served as the coordinator for the Violent Crimes Against Children Task Force, which investigates the sexual exploitation of children.  Agent Hyre received various types of training on how to conduct such investigations, and that training included, among other things, training on terminology used by sexual predators.

During Agent Hyre's testimony, Stahlman made a number of objections on the ground that Agent Hyre, a lay witness, was improperly giving expert testimony. Stahlman first objected when Agent Hyre, discussing Stahlman's Craigslist ad, stated: "To my experience, this ad would be flagged."  Initially, Stahlman objected that this statement was "non-responsive," and the district court overruled the objection.  Agent Hyre then continued his answer, but Stahlman objected again when Agent Hyre said: "In other words, Craigslist users, when they see an ad that they see to be illegal—[.]"  At that point, Stahlman objected, citing Federal Rule of Evidence 701, and stating "He's not qualified as an expert on Craigslist postings."

13

The district court called counsel up for a sidebar, and Stahlman's counsel reiterated, "I'm objecting to this as improper expert testimony." Counsel for the government responded that Agent Hyre's testimony was appropriate lay witness testimony and was "necessary to complete the story." The district court then engaged in this colloquy with the government:

Court: Well, all I can do is apply my common sense here, and I know what Craigslist is. I know what their communications are, but his specific explanation of what these terms mean in the context of child solicitation, child whatever, I think that's opinion testimony.

Government Counsel (GC): Okay. So you're saying that it's excluded under 701?

Court: No, I'm saying that you need an expert to testify to that.

GC: Okay.

Later, as Agent Hyre was testifying about his communications with Stahlman, the government asked: "Now, in the context of this conversation, what did you interpret, 'I am selfish. I wouldn't give mine up in exchange. Just getting that out there,' to mean?" Stahlman objected that the question called for an improper opinion, and the government responded that "this is admissible under Rule 701 as it's in the context of the conversation." The district court ruled: "701(a), the Court's finding is that this is rationally based, this witness's perception, this particular answer. The objection is overruled."

14

Stahlman objected again when the government asked Agent Hyre what the term "tickle fighting" meant. Initially, Stahlman objected on the ground that Agent Hyre's answer was non-responsive, and the district court overruled the objection. Agent Hyre then finished his response, explaining that "tickle fighting" in this context referred to when a sexual predator, in the course of tickling a child, "will let their hands slip." Stahlman objected again, this time on the basis of improper opinion, citing Rule 701(c). The government agreed to "just move on," and the district court did not rule on the objection.

Stahlman made his next objection when the government asked Agent Hyre, "[I]n the context of this conversation, how did you interpret what he—when he said, 'qualify myself the opportunity,'" and Agent Hyre responded, "What does he have to do to be able to meet my eleven-year-old." Stahlman objected, stating: "Again, I'm going to renew my previous objections to 701. (A) through (c) are conjunction. They're all required in order to be admitted, and I'm objecting as improper expert testimony." The district court ruled:

> Okay. Under 701, I hereby find that this testimony is rationally based on this witness's perception; that it is helpful to clearly understanding the witness's testimony or to determining a fact in issue; and based on the predicate that the government laid, there is specialized knowledge within the scope of this testimony.
> So based on that finding, and that finding is applicable retroactively, I'm going to allow this testimony. Your objection, though, is noted for the record.

15

Stahlman renewed his improper opinion objection again when the government asked Agent Hyre: "Now, again, in the context of this conversation, what did you interpret 'trimmed downstairs' to mean?" Stahlman's counsel asked to approach the bench, and the district court called both counsel to a sidebar, where this colloquy ensued:

> Defense Counsel (DC): Your Honor, again, this is specialized knowledge and he hasn't been disclosed as an expert to me, and I don't know how this Court is finding that it's—
>
> Court: Just let me ask you this.
>
> DC: Yes, Your Honor.
>
> Court: They laid a predicate on him of all the training he did, all the presentations he did, the fact that he's been doing this for eight years, leading investigations, testifying in Court many times with regard to solicitation, child exploitation, and child pornography. Now, they haven't asked that he be qualified as an expert, but, quite frankly, if they did, I would.
> But why doesn't he have specialized knowledge in this area, based on the predicate that he laid?
>
> DC: If he did, Your Honor, I would have asked for a <u>Daubert</u> hearing and I would have filed my own motion in limine. I don't think he's an expert, Your Honor.
>
> Court: Well, every single trial he's testified in these types of cases, he's either been able to testify under 702 or qualified as an expert.
> So your position is he's not an expert and, further, he has no specialized knowledge per 702?
>
> DC: Yes, Your Honor.
>
> Court: Okay.

16

DC: And if Your Honor does find that he's an expert, then I would move to strike him as they did not disclose him.

Court: I'm not making that finding. They haven't requested it.
But their position [is] that under 702, he meets the criteria and has specialized knowledge that would assist the jury in the context of that ruling. You disagree with that, correct?

DC: Yes, Your Honor.

Court: All right. What's your position on that?

GC: Your Honor, under 701, he's talking about the context of the conversation.
The question was is he trimmed downstairs in the context of what they're discussing. That's both rationally based on his perception and helpful to understanding what—the fact at issue, which is what they were getting at.
So I fail to understand how—why we're here even.

DC: I guess I'm confused, because Your Honor is saying that this does require specialized knowledge, and now the government is saying that it doesn't require specialized knowledge. I believe that it does, Your Honor.

Court: Well, there's a mix of that. I will tell you that I don't know that I would understand what "playing" means. But in the context of what he does, which I think they laid the predicate for, you picked an interesting hill to have a battle on, because I'm not the most hip person, but even I know what "trimmed downstairs" means, and I'm not an expert on this by any means.
So if I ask the jurors one at a time, I'll bet every one of them knows what that means. So I don't know why that needs any expert experience at all.

DC: All of his opinion testimony I find to be improper. So can I have a standing objection?

Court: You can.  But here's where I'm having a problem.  Look, if you want him to testify as to what he meant with what he wrote, that's fine.
If you want him to make—draw conclusions based on 701 based on what's in there, that's fine.  But when you get more specialized than that, for example, what do you think he meant by what he wrote, then she's got a point, because you're having him interpret the other guy's intent.  And it's a really fine line.

GC: Okay.

Court: All right.  So it might just be easier to have him read all the e-mails.  None of this is that difficult to understand.

 . . . .

Court: All right.  The objection is overruled.

As Agent Hyre continued to testify, Stahlman objected once more to improper opinion testimony when Agent Hyre stated, as to a particular email, "I took that to mean he wasn't a favorite of condoms."  The district court instructed the government to have Agent Hyre just read the email.

After the government's direct examination, Stahlman moved for a mistrial based on Agent Hyre's improper opinion testimony.  Stahlman argued that (1) Agent Hyre was permitted to testify "to his opinion regarding what would constitute terms that a sexual predator would use, his interpretation of what [Stahlman] was saying, of what [Stahlman] meant," and (2) the district court "found that this was specialized knowledge," but Agent Hyre was never disclosed as an expert witness.  The government responded that Agent Hyre's testimony was

18

permissible under either Rule 701 (as lay testimony) or Rule 702 (as expert testimony). The government stressed that Agent Hyre's testimony was based on his perception of the communications, helpful to the jury, and circumscribed to the context of the emails.

The district court denied Stahlman's motion for a mistrial. The district court reasoned that the government laid a predicate for Agent Hyre's knowledge and that Stahlman was not "ambushed" by Hyre's testimony regarding the emails.

## C.    Stahlman's First Motion for Judgment of Acquittal

After Agent Hyre testified, the government presented two more witnesses, a records custodian from Craigslist and another FBI agent. The government rested its case, and Stahlman made his first motion for a judgment of acquittal.

Stahlman's counsel argued that there was insufficient evidence to support a conviction because there was no evidence showing that he actually intended to engage in sexual activity with a minor, as opposed to merely engaging in fantasy role-playing with an adult. Stahlman contended that all of the evidence was consistent with fantasy role-playing, and there was no objective evidence (such as incriminating items in his car or child pornography on his phone) to show that his actual intent was to have sex with a minor.

19

The district court denied Stahlman's motion.  The district court observed that, at that point, there was no evidence to support Stahlman's fantasy role-playing theory and the evidence was sufficient to proceed further.

## D.    Stahlman's Defense

At the outset of his defense, Stahlman testified.  Stahlman had two nieces, whose lives he was very involved in as they grew up.  He had three children of his own—two sons from a previous marriage and one stepson with his current wife.

Since around September 2014, Stahlman had used Craigslist to seek fantasy relationships with other adults.  Through his Craigslist activities, Stahlman had traveled to meet ten adults.  Stahlman explained that, in his Craigslist ads, he adopts the "fantasy portrayal of a man named 'Sam.'"  Stahlman stated that "Sam's" age would vary from ad to ad and that "Sam" "has fantasies" and "portrays fantasies with other adults."

Stahlman testified that, in September 2016, he posted an ad similar to the November 2016 ad Agent Hyre ultimately responded to.  Stahlman later deleted that September 2016 ad because he "wasn't getting any traction," and then posted the November 2016 ad, which "modified the language a little bit" and had a photo attached.  Stahlman was motivated to post the November 2016 ad because he recently broke up with his long-term girlfriend and "had been searching for another person to have sex with," but "wasn't having any . . . luck."  Stahlman stated that

20

he "posted [his] normal post, which is about sexting," but did not get any responses, so he moved on to his "second thing," which "is to go into like a fantasy portrayal."

Stahlman elaborated: "I often go to fantasies, and I had done a massage fantasy. I had done a soldier fantasy. I had done a fantasy about . . . like you have no information about the person, you just meet and have sex." As to the particular daddy-daughter fantasy in the November 2016 ad, Stahlman stated: "So when I was doing research on what type of fantasies are out there, I came across daddy-daughter fantasies, and I found out that some women have daddy fetishes. So I thought, you know, it might be an avenue that I could go down."

Stahlman explained that his sexual communications, whether via texting, Kik, or email, were "definitely in the realm of fantasy" and "outside [his] regular life." Stahlman described these sexual communications prior to meeting someone as a sort of interview process to make sure that the other person "fit[s] the part" and can convincingly act out the fantasy.

Regarding Agent Hyre's response to his November 2016 ad, Stahlman testified that he "believed [it] was a response to [his] Craigslist ad requesting a sexual fantasy." Stahlman stated that, "[i]n fantasy, there's in-character and out-of-character comments," and the goal of fantasy role-playing is to "stay in character as much as possible." Thus, when Stahlman received Agent Hyre's

21

response to his ad, his "first instinct was this person was in character." Based on Agent Hyre's response, Stahlman believed he would be acting out his fantasy with "a straight man and a woman who's going to be portraying an eleven-year-old daughter."

As he reviewed the emails between Agent Hyre and himself, Stahlman testified that the majority of the messages were "in character" on his part and, he believed, "in character" on Agent Hyre's part as well. In other words, Stahlman indicated that the majority of his responses were meant to further the fantasy scenario he and Agent Hyre were discussing. Stahlman acknowledged, however, that some messages, such as when he told Agent Hyre he was busy at work or when Agent Hyre told him he had to attend a meeting, were out of character. Stahlman explained that he did not ask for confirmation that Agent Hyre was also engaging in fantasy role-playing when Agent Hyre first responded to the ad because he inferred that someone responding to his "ad about a fantasy" was engaging in that same fantasy. Stahlman stated that it "would have been breaking the atmosphere" to ask for confirmation that Agent Hyre was also engaging in fantasy.

Stahlman testified that he had never had sex with a minor or had sexual thoughts about children. In communicating with Agent Hyre, Stahlman never believed he was talking to an actual pedophile with a real minor daughter. Rather,

22

he believed Agent Hyre was acting as an intermediary in the fantasy for his adult wife or girlfriend. When Agent Hyre sent him the picture of his supposed 11-year-old, Stahlman "didn't believe the photo was real" and assumed the couple he believed he was talking to "just uploaded a photo that didn't really exist" or "found a photo like I did online."

Stahlman explained that when he told Agent Hyre in December 2016 to "[g]o ahead and delete [him]," it was because his schedule was busy and he "wasn't willing to do the back and forth" of emailing if he was not going to be able to actually meet the couple he believed he was talking to. Stahlman also stated that some people on Craigslist "just do endless e-mails and continue forever and it never really pans out to anything, and I wasn't interested in that either." When Agent Hyre reached back out to him 45 days later, in late-January 2017, Stahlman believed he was "trying to re-engage the fantasy." Stahlman explained that his repeated questions to Hyre about condoms were an "in character" way to ask if the adult woman he believed he would be engaging with "was on some form of birth control." Stahlman explained that this was "very important to [him]" because "impregnating an adult [was] completely out of the question" given his personal circumstances.

When he went to meet with Agent Hyre, Stahlman "believed that there was a chance that if somebody was eavesdropping on the[ir] conversation," it was

23

possible he could be caught up in a sting operation.  Stahlman assumed, however, that if that happened, it would be easy to demonstrate that "there was no actual eleven-year-old girl . . . in the scenario at all," and it was just fantasy.  Stahlman described his Teenage Mutant Ninja Turtles t-shirt as "vintage" and "not the version that's on TV today that children watch."

Stahlman also presented the expert testimony of Richard Conner, a computer forensics consultant.  Conner had conducted forensic examinations in cases involving alleged sexual misconduct, including approximately 240 child pornography cases.  Conner testified that the female in the picture Stahlman posted with his Craigslist ad was classified as "age difficult," meaning he could not tell if the picture was of an adult or a child.  Conner also forensically examined the contents of Stahlman's cell phone.  Conner examined approximately 87 videos and more than 2,000 still images on Stahlman's phone and did not find any images or video of children in the nude or depicted in a sexually explicit manner.  Conner also did not find any evidence of deleted files, encryption software, or software that could be used to clean up deleted files.  Conner also did not find any child pornography on Stahlman's phone.

## E.    Stahlman's Second Motion for Judgment of Acquittal

After Conner's testimony, the defense rested.  Stahlman renewed his motion for a judgment of acquittal.  Stahlman contended that, because he is presumed

innocent until proven otherwise, his "ad was presumed non-criminal until the government proved that it was not." Stahlman maintained that the ad "sought fantasy," and his own unrebutted testimony demonstrated that "he showed up because he was expecting an adult and he was operating this entire e-mail and Kik dialogue as a role-play."

The government responded that the totality of the evidence, viewed in the light most favorable to the government, demonstrated that Stahlman did attempt to entice a minor to engage in sexual activity and took a substantial step toward doing so by showing up at the Gander Mountain parking lot. The government emphasized that Stahlman repeatedly indicated in the emails that he was interested in meeting the fictional 11-year-old, and the details of his conversation with Agent Hyre demonstrated that Stahlman "wanted to groom the child into easing her into a sexually exploitive situation."

The district court again denied Stahlman's motion for judgment of acquittal. The district court found that there were competing theories of the case, and it was for the jury to decide which was true. The jury disbelieved Stahlman and convicted him of attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).

## F.    Sentencing

The presentence investigation report ("PSR") calculated Stahlman's total offense level as a 40, consisting of: (1) a base offense level of 28, pursuant to U.S.S.G. § 2G1.3(a)(3); (2) a two-level increase under U.S.S.G. § 2G1.3(b)(3) because his offense involved the use of a computer; (3) an eight-level increase under U.S.S.G. § 2G1.3(b)(5) because the offense involved a minor under the age of 12; and (4) a two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, based on Stahlman's perjured testimony at trial. As to perjury, the PSR recounted that: (1) Stahlman "informed the jury he has never had sexual thoughts about children"; but (2) during his proffered examination, outside the presence of the jury, he "acknowledged masturbating to sexually explicit stories engaging minors posted on the ASSTR.org website."[3] Stahlman's total offense level of 40 and criminal history category of I resulted in an advisory guidelines range of 292 to 365 months' imprisonment. His § 2422 conviction carried a mandatory minimum sentence of 10 years. The probation officer recommended a low-end sentence of 292-months' imprisonment.

---

[3]After testifying before the jury, Stahlman proffered testimony, outside the presence of the jury, regarding the absence of child pornography on his phone. Stahlman testified that he had 87 videos and over 2,000 still images on his phone, and none of those videos or images depicted children in the nude or in sexually explicit positions.

On cross-examination during this proffer, Stahlman admitted that his phone did contain an email with a link to ASSTR.org, which is "a collection of erotic fantasies and erotic stories uploaded by anonymous authors." Stahlman further acknowledged that authors post sexually explicit stories about minors on ASSTR.org, including stories about children aged 10 to 12. Stahlman stated that he had read, and masturbated to, three such stories.

26

Stahlman filed a written objection to the obstruction of justice enhancement. Stahlman submitted that the mere fact that his trial testimony did not coincide with Agent Hyre's was not evidence of obstruction—Stahlman "simply exercised his constitutional right to trial as well as to testify." Stahlman asserted that the probation officer's and the government's belief that he lied was insufficient to warrant the obstruction enhancement and, in any event, he had not lied. Stahlman argued that "when asked questions by the government during the proffered cross examination regarding the asstr.org stories, those stories were based on fantasy," whereas "[t]he question asked during direct examination in front of the jury," about his sexual attraction to children, "was based on reality." Because the questions were different, Stahlman contended, he did not lie. Stahlman additionally pointed out that the jury did not hear his testimony during the proffer, and thus his answer did not bear on the verdict.

The probation officer responded that Stahlman's testimony about masturbating to sexually explicit stories involving minors was contradictory to his earlier testimony that he never had sexual thoughts about children. The probation officer therefore maintained that the obstruction enhancement was appropriate.

At the sentencing hearing, Stahlman did not offer any additional argument regarding his objection to the obstruction enhancement. The district court overruled Stahlman's objection, stating that "[a]s to the controverted . . . guideline

27

applications, the Court adopts the position of the Probation Office as stated in the [PSR] addendum." The district court determined that Stahlman's total offense level was 40, his criminal history category was I, and his advisory guidelines range was 292 to 365 months' imprisonment.

Stahlman argued for a mandatory-minimum, below-guidelines sentence of 10 years, based on, among other things, his lack of criminal history, his years of military service, the fact that he is an engaged and involved father to his sons, and the fact that he will experience collateral consequences from having to register as a sex offender. The government requested a within-guidelines sentence, emphasizing various factors including the seriousness of Stahlman's offense, the explicit nature of his communications with Agent Hyre, and the fact that he traveled to meet the fictional 11-year-old.

In pronouncing Stahlman's sentence, the district court remarked, "[b]luntly, Mr. Stahlman, your position on what happened here was implausible." The district court elaborated:

> If you were indeed only involved in role-playing and had no intention to do this, there is simply no plausible answer for why you would drive from Seminole County, Florida, to Orange County, Florida, to meet in that parking lot, dressed the way you were, in order to do anything but meet with that child.
> Your position went from implausible to incredible for me. The jury didn't believe you and, frankly, I don't believe you. . . .
> I don't blame you for taking the position that you have. I don't blame you for defending yourself. You're certainly never going to be penalized in any courtroom, and you shouldn't be, for exercising your

28

right to a trial.  But you can be held accountable for what you say at
trial, and what you said at trial simply wasn't true.

The district court then sentenced Stahlman to 292 months' imprisonment.
Stahlman objected that the sentence was procedurally and substantively
unreasonable.  On September 28, 2017, Stahlman filed his first notice of appeal,
which was docketed as case number 17-14387.

## G.    Stahlman's Post-Trial Motion for New Trial

While his appeal was pending, Stahlman filed a "Motion for New Trial,
Request for an Indicative Ruling, and Prayer for an Evidentiary Hearing," under
Federal Rule of Criminal Procedure 33 and Federal Rule of Appellate Procedure
12.1, in the district court.  In his motion, Stahlman explained that on November 2,
2017, after his May 2017 trial and September 2017 sentencing, the government
disclosed for the first time[4] that Agent Hyre was sanctioned by the FBI in August
2013 for conducting undercover child exploitation investigations using his home
computer.

Specifically, the November 2 disclosure advised that the FBI "issued
administrative disciplinary action against [Agent Hyre]" in August 2013, in the
form of a seven-day suspension without pay, after finding "that SA Hyre violated

---

[4]This disclosure was made in a different case in the Middle District of Florida, but as that
defendant and Stahlman were both represented by the Federal Public Defender's Office in that
district, Stahlman's counsel also learned of the disclosure.

29

FBI policy by using a home computer to conduct undercover child sexual exploitation investigations." The disclosure further stated that, because of Agent Hyre's unauthorized use of his personal computer during an undercover operation, Homeland Security Investigations ("HSI"), "not knowing that SA Hyre was acting in an undercover capacity, investigated SA Hyre's online identity." Upon learning who Agent Hyre was, HSI provided the information to the FBI for further action.

During the subsequent FBI investigation, Agent Hyre admitted to using his home computer for investigative purposes on several occasions but stated that he was unaware doing so was in violation of FBI policy. Although the standard penalty for such a violation is a five-day suspension, the FBI found that "aggravation was appropriate because SA Hyre's actions caused him to be the subject of a child pornography investigation by another federal agency," and he "acknowledged engaging in similar behavior on several other occasions." Agent Hyre contested the finding that he had violated FBI policy, as well as the severity of the sanction, but the FBI upheld his seven-day suspension.

Stahlman's post-trial motion argued that Agent Hyre's prior discipline constituted "newly discovered evidence" of either a Brady[5] violation or a Federal Rule of Criminal Procedure 16 violation, and the suppression of this evidence substantially prejudiced his rights to a fair trial, to present his theory of defense,

---

[5]Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).

and to attack the elements of the charged offense.  As to his <u>Brady</u> claim, Stahlman contended that Agent Hyre's prior discipline constituted impeachment evidence that was favorable to him.  Stahlman further asserted that, had this evidence been timely disclosed, there was a reasonable probability the outcome of his trial would have been different.  Stahlman emphasized that his case "really boiled down to a credibility determination" between himself and Agent Hyre, and having information about Agent Hyre's prior discipline would have "played a material and substantial factor" in how Stahlman prepared his defense.

As to his discovery violation claim, Stahlman submitted that the government's failure to disclose Agent Hyre's prior discipline was an egregious violation of Criminal Rule 16.  Stahlman acknowledged that, to obtain a new trial on a non-<u>Brady</u>, newly discovered evidence claim, the evidence cannot be "merely impeaching."  Stahlman maintained, however, that Agent Hyre's prior discipline was "so much more" than just impeachment evidence, as having that information would have affected Stahlman's entire trial strategy.

Stahlman acknowledged that, because his appeal in Case No. 17-14387 was then pending, the district court lacked jurisdiction to grant his motion for new trial.  Stahlman therefore requested that the district court enter an indicative ruling certifying that the motion should be granted, which would allow this Court to

31

consider a motion to remand jurisdiction to the district court to hold an evidentiary hearing and address the merits of his new trial motion.[6]

In response, the government argued that Stahlman's <u>Brady</u> claim failed because: (1) he did not coherently articulate how evidence of Agent Hyre's prior discipline would have changed the outcome of the trial; (2) he failed to show how Hyre's prior discipline would be admissible; (3) Hyre's misconduct "did not involve any finding of dishonesty or untruthfulness," making it inadmissible as evidence bearing on credibility under Federal Rule of Evidence 608(b); (4) Hyre's discipline would also be inadmissible under Rules 403 and 404(b); (5) other circuits have found a law enforcement policy violation does not constitute <u>Brady</u> material; and (6) in any event, the evidence against Stahlman was "overwhelming," making it unlikely that evidence of Hyre's prior discipline would have altered the jury's verdict.

As to Stahlman's discovery violation claim, the government argued that Agent Hyre's prior discipline was merely impeachment evidence and that Stahlman failed to show it was material or would have produced a different result

---

[6]After filing his motion for new trial in the district court, Stahlman filed a motion with this Court requesting that Case No. 17-14387 be stayed pending the district court's ruling on his new trial motion.  This Court granted Stahlman's motion for a stay until the district court ruled on Stahlman's post-trial motion.

at trial.  Lastly, the government asserted that an evidentiary hearing was not required to resolve Stahlman's motion.

In a June 2018 order, the district court denied Stahlman's new trial motion. The district court acknowledged that Appellate Rule 12.1 supplies the rule for a district court's consideration of a Criminal Rule 33 motion based on newly discovered evidence while an appeal is pending.  However, the district court went on to recite the legal standards governing motions for new trial "based on the weight of the evidence."  The district court then stated:

> Defendant elected to testify at trial.  The written communications between Special Agent Hyre and Defendant were introduced as evidence.  The substance of those communications were not at issue. Defendant told the jury that he was simply role-playing and that his statements were in no way a sincere attempt to engage in sexual activity with a child.  This was not, as Defendant continues to argue, a credibility determination between the testimony of Special Agent Hyre and Defendant.  Rather, Defendant urged the jury to rely on his interpretation of the electronic communications instead of their own common sense interpretation.  The jury declined to do so.

The district court then denied Stahlman's Criminal Rule 33 motion and stated: "In the Court's view, the Motion does not raise a substantial issue."

Stahlman filed a new notice of appeal from the denial of his post-trial motion, which was docketed as case number 18-12866 in this Court.  We consolidated that appeal with Stahlman's earlier appeal in Case No. 17-14387.

With this background, we turn to Stahlman's issues on appeal.

## III. EVIDENTIARY RULINGS

Stahlman raises two claims of evidentiary error: (1) improper exclusion of Dr. Carr's expert testimony; and (2) improper admission of Agent Hyre's lay testimony on matters that were the subject of expert testimony.  We first review the rules governing expert testimony and then address each claim.

### A.    Applicable Federal Rules of Evidence

Under the Federal Rules of Evidence, opinion testimony by witnesses is divided into two categories: lay testimony and expert testimony.  See Fed. R. Evid. 701 & 702.  If a witness is testifying as a lay witness, and not as an expert, that witness may only testify to an opinion that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

By contrast, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may give opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

34

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  If the government intends to present a witness as an expert in a criminal trial, the government must disclose that witness as an expert prior to trial and provide a written summary of the expected testimony.  See Fed. R. Crim. P. 16(a)(1)(G); United States v. Hamaker, 455 F.3d 1316, 1331 (11th Cir. 2006).

In determining whether to admit expert testimony under Rule 702, district courts must consider if: (1) the expert is qualified to give competent testimony about the matters he intends to address; (2) the methodology the expert employed to reach his conclusions is sufficiently reliable under Daubert[7]; and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or other specialized expertise, to understand the evidence or determine a fact in issue.  City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998).

In Daubert, the Supreme Court explained that a district court faced with a proffer of expert testimony must assess whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts in issue.  Daubert, 509 U.S. at 592-93, 113 S. Ct. at 2796.  Many factors bear

---

[7]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993).

35

on that inquiry, including: (1) whether the theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate; and (4) whether the theory or technique is widely accepted.  Id. at 593-94, 113 S. Ct. at 2796-97.  The Supreme Court emphasized that the Rule 702 inquiry is "a flexible one," the ultimate goal of which is to determine the evidentiary relevance and reliability of the proposed expert testimony.  Id. at 594-95, 113 S. Ct. at 2797.

Even if an expert's proposed testimony satisfies Rule 702 and Daubert, the testimony also must comply with other limitations contained in the Rules of Evidence.  Of relevance here, Rule 704(b) provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b).  In other words, an expert may not opine on the defendant's intent.  See United States v. Augustin, 661 F.3d 1105, 1123 (11th Cir. 2011).  However, an expert may, consistent with Rule 704(b), give testimony "that supports an obvious inference with respect to the defendant's state of mind if that testimony does not actually state an opinion on [the] ultimate issue, and instead leaves this inference for the jury to draw."  Id. (internal quotations and alteration omitted).

36

**B.      Dr. Carr's Testimony and Rule 704(b)**

The district court excluded Dr. Carr's testimony for two reasons.  First, it concluded that Dr. Carr's testimony was inadmissible under Rule 702 because his methodology was unreliable, and his testimony would not assist the trier of fact.  Second, it determined that Dr. Carr's testimony would violate Rule 704(b).[8] Because we agree with the district court that Dr. Carr's testimony was inadmissible under Rule 704(b), we do not address its separate conclusion that his testimony was also inadmissible under Rule 702.

Here, Stahlman sought to present Dr. Carr's opinions that "[t]here [was] insufficient behavioral evidence to conclude that Mr. Stahlman intended to have real sex with a minor, rather than act out a fantasy involving adults," and that "[t]he clinical evidence suggests that Mr. Stahlman intended to act out a fantasy, rather than have sexual contact with a minor." (emphasis added).  These statements plainly run afoul of Rule 704(b)'s directive that an expert not opine on whether a criminal defendant had or did not have the requisite mental state to commit the

---

[8]"We review for abuse of discretion the district court's decisions regarding the admissibility of expert testimony and the reliability of an expert opinion." United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).  "Indeed, the deference that is the hallmark of abuse-of-discretion review requires that we not reverse an evidentiary decision of a district court unless the ruling is manifestly erroneous." Id. (internal quotations and citation omitted).  "Thus, it is by now axiomatic that a district court enjoys considerable leeway in making these determinations." Id. (internal quotations omitted).  "[W]e must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." Id. at 1259.

charged crime.  See Fed. R. Evid. 704(b).  In testifying that the clinical and behavioral evidence showed Stahlman intended to act out a fantasy with adults, rather than engage in sex with a minor, Dr. Carr would be doing more than providing testimony that supports an inference as to intent—he would, in effect, be telling the jury Stahlman did not intend to induce a minor to engage in sexual activity.  See 18 U.S.C. § 2422(b); Augustin, 661 F.3d at 1123; see also United States v. Hofus, 598 F.3d 1171, 1180 (9th Cir. 2010) ("To say that Hofus meant the texting only as fantasy is simply another way of saying he did not really intend to entice or persuade the young girls, which is precisely the question for the jury.").

In arguing to the contrary, Stahlman cites the D.C. Circuit's decision in United States v. Hite, 769 F.3d 1154, 1168-1170 (D.C. Cir. 2014), a § 2422 prosecution in which the D.C. Circuit reversed the district court's exclusion of the defendant's expert witness.  In Hite, the defendant sought to present the expert testimony of Dr. Frederick Berlin on, inter alia, (1) the difference between an actual desire to engage in sex with a minor and mere fantasy or role-playing, and (2) his diagnosis that the defendant Hite did not suffer from any psychiatric condition associated with, or that would predispose a person to, a desire to have sexual contact with minors.  Id. at 1168.  Importantly, the district court in Hite did not exclude the expert's proffered testimony under Rule 704(b).  See id.  Rather, it excluded Dr. Berlin's testimony because it found the testimony was not properly

38

disclosed under Federal Rule of Criminal Procedure 16 and had little probative value.  Id.

On appeal, the D.C. Circuit not only rejected the district court's Rule 16 analysis, but also concluded that "[b]ecause the District Court determined that Hite's sexual interest in children was relevant to the question of whether he had the requisite intent with respect to 18 U.S.C. § 2422(b), Hite should have been permitted to introduce [Dr. Berlin's testimony] so that he could seek to demonstrate to the jury that he did not possess such an interest."  Id. at 1169.  The D.C. Circuit further noted that Dr. Berlin's proposed general testimony concerning fantasy and role-playing could "shed light on what may be an unfamiliar topic to most jurors: sexual fantasy involving children, particularly the kind that unfolds in the virtual realm of the Internet."  Id. at 1170.  The D.C. Circuit then stated that "Dr. Berlin may not testify that Hite lacked the requisite intent, see Fed. R. Evid. 704(b)," but that "expert testimony that generally explains the world of sexual fantasy on the Internet is permissible."  Id.

Hite is distinguishable from Stahlman's case because the proposed testimony in Hite was materially different from, and did not go as far as, Dr. Carr's proffered testimony here.  In Hite, the defendant sought to have his expert testify about (1) the difference, generally speaking, between real-life attraction to children and online fantasy and role-playing, and (2) the fact that the defendant Hite had not

been diagnosed with any psychiatric condition that was associated with a sexual attraction to children.  Id. at 1168.  While that testimony might support an inference that the defendant Hite lacked the requisite intent to induce a minor to engage in sexual activity, see Augustin, 661 F.3d at 1123, neither of those statements directly opines on the defendant's intent.

Here, by contrast, Dr. Carr's proposed testimony went beyond general testimony about online fantasies and Stahlman's psychiatric diagnosis.  Rather, Dr. Carr directly opined that Stahlman intended to act out a fantasy and did not intend to have sex with a minor.  Under Rule 704(b), this is a bridge too far.[9]  We therefore conclude that the district court did not abuse its discretion in excluding Dr. Carr's testimony.

## C.    Agent Hyre's Testimony

Stahlman contends that the district court erred in allowing Agent Hyre to offer lay opinions regarding: (1) the age of the girl in the picture Stahlman posted

---

[9]We note that Stahlman does not argue on appeal that the district court should have more narrowly circumscribed its ruling, excluding only those opinions that it found violated Rule 704(b), while allowing Dr. Carr to provide more general testimony akin to that at issue in Hite. See also United States v. Joseph, 542 F.3d 13, 21-22 (2d Cir. 2008) (urging the district court to "give a more thorough consideration" on retrial to the defendant's proposed expert testimony "about role-playing in the context of sexually explicit conversations on the Internet"), abrogated in part on other grounds as recognized in United States v. Ferguson, 676 F.3d 260, 276 n.14 (2d Cir. 2011); United States v. Gladish, 536 F.3d 646, 650-51 (7th Cir. 2008) (concluding district court should have allowed expert to testify regarding the defendant's use of the internet "to gratify his sexual desires" and preference for "emotional and physical distance" in interpersonal relationships, making it "unlikely, given the defendant's psychology, that he would act on his intent").  Accordingly, we express no opinion as to whether a more limited version of Dr. Carr's testimony might have been permissible.

with his Craigslist ad; (2) what Craigslist is used for; (3) whether Stahlman's ad would be "flagged"; (4) what Stahlman meant in the ad; (5) Hyre's interpretation of the email communications between Hyre and Stahlman; and (6) what he thought Stahlman meant in those communications.  Stahlman asserts that all of this testimony was based on specialized knowledge and could not be offered as lay testimony.  Further, the government did not disclose or present Agent Hyre as an expert witness.[10]

The district court appears to have based its rulings on Agent Hyre's testimony on a misunderstanding of the rules concerning lay and expert witnesses. Despite allowing the government to present Agent Hyre as a lay witness, the district court specifically found that "there is specialized knowledge within the scope of this testimony."  But Rule 701(c), addressing lay opinion testimony, makes quite clear that a lay witness's opinions must "not [be] based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c) (emphasis added); see also Fed. R. Evid. 702 (addressing expert testimony).

---

[10]We review a district court's ruling regarding the admissibility of lay opinion testimony under Rule 701 for a clear abuse of discretion.  United States v. Jayyousi, 657 F.3d 1085, 1102 (11th Cir. 2011).  Errors in admitting opinion testimony as lay testimony are subject to harmless error review.  See United States v. Sarras, 575 F.3d 1191, 1217 (11th Cir. 2009).  Additionally, we will not reverse a conviction based on a Rule 16 expert disclosure violation unless the violation prejudiced the defendant's substantial rights.  See Hamaker, 455 F.3d at 1332; United States v. Tinoco, 304 F.3d 1088, 1119-20 (11th Cir. 2002).

When a district court bases an evidentiary ruling on an erroneous view of the law, that "constitutes an abuse of discretion per se." United States v. Henderson, 409 F.3d 1293, 1297 (11th Cir. 2005). However, errors in admitting opinion testimony as lay testimony are subject to harmless error review. See United States v. Sarras, 575 F.3d 1191, 1217 (11th Cir. 2009). In other words, we will not reverse a conviction based on an erroneous evidentiary ruling unless the error had a substantial influence on the outcome of the case or leaves us in grave doubt as to whether the error affected the outcome. Henderson, 409 F.3d at 1300.

Here, we conclude that the district court's error in applying the rules regarding lay and expert witnesses to Agent Hyre's testimony was harmless. First, some of Agent Hyre's testimony Stahlman challenges was undoubtedly proper lay opinion testimony under Rule 701. For example, Agent Hyre's estimate as to the age of the girl in the picture Stahlman posted required no specialized knowledge— any lay witness may properly estimate the age of a person in a photograph based solely on their perception. See Rule 701(a); cf. also United States v. Smith, 459 F.3d 1276, 1297 n.18 (11th Cir. 2006) (indicating that an officer's testimony that certain photographs depicted "very, very young girls" was not plainly based on specialized knowledge, as opposed to a mere lay opinion).[11]

---

[11]We note that courts in this Circuit have at times admitted expert testimony concerning the age of a child depicted in a videotape. See United States v. Anderton, 136 F.3d 747, 750 (11th Cir. 1998) (discussing competing expert testimony presented at trial regarding age of

Similarly, Agent Hyre's testimony that the "Personals, Casual Encounters" section of Craigslist, where Stahlman posted his ad, was "used as kind of like a hookup site" where "people go on to find other persons to meet up with and generally have sex with," was within the realm of proper lay testimony. Any person looking at that portion of the Craigslist website could, without having any specialized knowledge, perceive that its purpose was to facilitate casual sexual encounters. Furthermore, even some of Agent Hyre's interpretations of Stahlman's emails—such as his understanding of what word Stahlman meant to use when there were typographical errors in the emails—were based solely on his perceptions of the conversation and not on any specialized knowledge from his experience as a law enforcement officer.

Agent Hyre's other testimony—regarding what posts would be "flagged" on Craigslist and interpreting what Stahlman meant in his ad and in his email communications—is perhaps closer to the line, but nevertheless falls within the permissible bounds of lay testimony under this Court's precedent. This Court has held that a law enforcement agent may properly testify as a lay witness about the meaning of code words used in intercepted calls based on what the agent learned

children in a video). In Anderton, however, the Court did not address whether such age estimate testimony must come from an expert or requires specialized knowledge. See id. In other words, it certainly may be permissible for an expert to testify regarding a person's estimated age, but that does not necessarily mean that only an expert can give such testimony.

during his five-year terrorism investigation. See United States v. Jayyousi, 657 F.3d 1085, 1104 (11th Cir. 2011). Similarly, this Court has concluded that law enforcement officers may offer lay testimony about the meaning of coded terms in a narcotics case based on both "their perceptions [in the instant case] and on their [past] experience as police officers," albeit under an earlier version of Rule 701 that did not contain the current version's restriction that testimony not be based on specialized knowledge. See United States v. Novaton, 271 F.3d 968, 1008-09 (11th Cir. 2001); see also Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 & n.17 (11th Cir. 2003) (approving lay witness testimony that was "based upon their particularized knowledge garnered from years of experience within the field" and "find[ing] no basis to determine that Novaton . . . require[d] a different finding after Rule 701's amendment").

Here, Agent Hyre's testimony about flagged posts on Craigslist and his interpretations of Stahlman's statements in his ad and in his email communications were based on Agent Hyre's perceptions as a participant in his conversations with Stahlman in this case and informed by his years of experience investigating child exploitation and child pornography crimes. As explained above, this Court has held that testimony of that nature is a proper subject for a lay witness. See Jayyousi, 657 F.3d at 1104; Tampa Bay Shipbuilding, 320 F.3d at 1223; Novaton, 271 F.3d at 1008-09. Further, in the circumstances here, Agent Hyre in this case

44

was testifying to give his side of the story as to what his messages meant. The district court did not clearly abuse its discretion in permitting Agent Hyre to testify as a lay witness. See Jayyousi, 657 F.3d at 1102.

Moreover, even if some of Agent Hyre's testimony veered into the realm of specialized knowledge that ought to have been disclosed and presented as expert testimony, any error in admitting that testimony as lay testimony was harmless. See Sarras, 575 F.3d at 1217. First, Stahlman has not demonstrated that the government's failure to disclose Agent Hyre as an expert prior to trial under Criminal Rule 16 prejudiced his substantial rights. See Hamaker, 455 F.3d at 1332; United States v. Tinoco, 304 F.3d 1088, 1119-20 (11th Cir. 2002). The government identified Agent Hyre as a witness before trial, and Stahlman was "aware of his role in the investigation," had copies of all the email and Kik messages between himself and Hyre, and knew that Hyre's testimony would be based on his communications with Stahlman. See Hamaker, 455 F.3d at 1332. Furthermore, the district court explicitly stated at trial that, had Agent Hyre been offered as an expert, the district court would have admitted him as such. So we know that any motion in limine Stahlman might have raised to exclude Agent Hyre's expert testimony would likely have failed. Finally, as explained below, ample evidence supported Stahlman's conviction, and Stahlman has not shown that

45

the outcome of the trial would have been different absent Agent Hyre's allegedly improper lay testimony.  See Sarras, 575 F.3d at 1217.

In sum, we conclude that the district court did not reversibly err in allowing Agent Hyre to testify as a lay witness or in denying Stahlman's motion for a mistrial on that basis.

## IV. MOTIONS FOR JUDGMENT OF ACQUITTAL

Stahlman next argues that the district court erred in denying his motions for a judgment of acquittal because the evidence was insufficient to prove his intent or, relatedly, that he took a substantial step toward carrying out that intent.[12]  In essence, Stahlman submits that the trial evidence established two competing hypotheses of his intent—either, as Stahlman testified, he was seeking a fantasy with an adult posing as a minor, or, as Agent Hyre testified, he intended to engage in sex with an actual minor.  According to Stahlman, proof of his guilt beyond a reasonable doubt required that the government exclude every reasonable hypothesis but that of guilt, and the government failed to do so because there was a reasonable innocent explanation for his actions.

---

[12]We review de novo the district court's denial of a motion for judgment of acquittal on sufficiency of the evidence grounds.  United States v. Keen, 676 F.3d 981, 994 (11th Cir. 2012).  In doing so, we review the trial evidence in the light most favorable to the government, drawing all reasonable factual inferences in favor of the verdict.  United States v. Henderson, 893 F.3d 1338, 1348 (11th Cir. 2018).  If there is "any reasonable construction of the evidence [that] would have allowed the jury to find the defendant guilty beyond a reasonable doubt," we will not overturn the jury's verdict.  Id. (internal quotation omitted).

Here, the statute of conviction, § 2422(b), proscribes knowing attempts to induce or entice a minor to engage in sexual activity, stating:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). To prove that a defendant violated § 2422(b) by attempting to induce a minor to engage in sexual activity, the government must show that the defendant (1) had the specific intent to induce a minor to engage in sexual activity, and (2) took a substantial step toward the commission of that offense. United States v. Lee, 603 F.3d 904, 913-14 (11th Cir. 2010); United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007).

A substantial step is an "objective act[]" that "mark[s the defendant's] conduct as criminal such that his acts as a whole strongly corroborate the required culpability." United States v. Murrell, 368 F.3d 1283, 1288 (11th Cir. 2004). This Court has held that a defendant may be convicted under § 2422(b) even if he attempted to exploit only a fictitious minor and communicated only with an adult intermediary. See Lee, 603 F.3d at 912-13; see also Murrell, 368 F.3d at 1286-87.

Ample evidence supports Stahlman's conviction for attempting to entice a minor to engage in sexual activity. The trial evidence showed that Stahlman engaged in a monthslong conversation with a man he believed to be the parent of

47

an 11-year-old daughter, during which he discussed in graphic detail plans to meet and engage in sexual activity with the daughter. This conversation began with Stahlman's own Craigslist post seeking a "daddy/daughter fantasy" with a "young 'looking' girl." Stahlman was the first to broach the possibility of engaging in sexual activity with Agent Hyre's fictional 11-year-old, stating that he would not violate his own daughter, but "would play with someone else's," and telling Agent Hyre "I just envisioned licking your daughter's pussy as she slept and you filming it."

As the conversation progressed, Stahlman's responses demonstrated his strong sexual interest in the 11-year-old daughter, including his explicit descriptions of the types of sex acts he wanted to engage in with the girl. Stahlman's messages likewise evinced his intent to induce the daughter, through her father, to engage in sexual activity. For example, Stahlman asked Agent Hyre what he would have to do to "qualify" for the opportunity to meet the daughter, asked questions about what types of sex acts Agent Hyre would or would not consent to, and asked Agent Hyre what the daughter would enjoy.

And Stahlman's interest remained strong throughout the conversation—even when Stahlman's scheduling conflicts prevented him from carrying out the first planned meeting in November 2016, Stahlman told Agent Hyre he had not changed his mind and was still interested in sex with the daughter if he could find the time.

48

Once the January 2017 meeting was set, Stahlman reiterated how much he was looking forward to meeting the daughter, and Stahlman took a substantial step toward doing so when he drove from his home in Longwood (wearing a child-friendly Ninja Turtles t-shirt) to meet Agent Hyre in Lake Mary.

Stahlman protests that there is an innocent explanation for all of this conduct—namely, that the entire thing was a big misunderstanding, as he believed he was conversing with an adult couple as part of a fantasy role-playing scenario, and not with the father of an actual 11-year-old girl. The problem for Stahlman is that the jury was not required to accept this innocent explanation. Indeed, because Stahlman testified in his own defense at trial, the jury was free to (and, based on their verdict, clearly did) disbelieve his testimony and consider it as substantive evidence of his guilt. See United States v. Bacon, 598 F.3d 772, 776 (11th Cir. 2010).

Contrary to Stahlman's contention, this Court is not required on appeal to rule out every hypothesis of innocence. Rather, in reviewing the sufficiency of the evidence supporting a jury's guilty verdict, we must review the evidence in the light most favorable to the government and draw all reasonable factual inferences in favor of the verdict. United States v. Henderson, 893 F.3d 1338, 1348 (11th Cir. 2018). And if there is "any reasonable construction of the evidence [that] would have allowed the jury to find the defendant guilty beyond a reasonable doubt," we

49

will not overturn the jury's verdict.  Id. (internal quotations omitted); see also

United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005) (stating that the "jury

is free to choose among reasonable constructions of the evidence," and the

evidence need not "exclude every reasonable hypothesis of innocence" (internal

quotations omitted)).  Here, there is such a reasonable construction of the evidence.

The jury reasonably could have concluded (and clearly did conclude) beyond a

reasonable doubt that, despite Stahlman's testimony to the contrary, Stahlman

meant what he said in his communications with Agent Hyre and traveled to the

Gander Mountain in Lake Mary for the purpose of carrying out the sexual acts he

had described with the 11-year-old girl.

Because sufficient evidence supported Stahlman's § 2422(b) conviction, the

district court did not err in denying his motions for judgment of acquittal.[13]

## V. OBSTRUCTION OF JUSTICE ENHANCEMENT

Stahlman next asserts that the district court erroneously applied a two-level

obstruction of justice enhancement, rendering his 292-month sentence procedurally

---

[13]Stahlman also contends that the cumulative effect of the trial errors requires reversal of his conviction.  Under the cumulative error doctrine, an aggregation of otherwise nonreversible errors can warrant reversal where the combined effect of the errors denied the defendant his constitutional right to a fair trial.  See United States v. Mosquera, 886 F.3d 1032, 1052 (11th Cir. 2018).  As explained above, the district court committed no trial error, and thus Stahlman's cumulative error claim fails.  See United States v. King, 751 F.3d 1268, 1277-78 (11th Cir. 2014) (stating "where there is no error or only a single error, there can be no cumulative error" (internal quotations omitted)).

and substantively unreasonable.[14]  Stahlman contends that (1) the district court failed to make any particularized factual findings regarding his alleged perjury, and (2) this Court lacks a meaningful basis for appellate review.[15]

Under § 3C1.1 of the Sentencing Guidelines, a two-level enhancement applies if the defendant obstructed justice.  U.S.S.G. § 3C1.1.  Specifically, § 3C1.1 provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

Id.  The commentary to § 3C1.1 further provides that a defendant qualifies for the obstruction enhancement if he commits perjury.  Id. § 3C1.1, comment. n.4(B).

The Supreme Court has defined perjury in this context as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v.

---

[14]We review a district court's factual findings supporting an obstruction of justice enhancement for clear error and its application of the guidelines to those facts de novo.  United States v. Perkins, 787 F.3d 1329, 1341 (11th Cir. 2015).  In doing so, we "accord great deference to the district court's credibility determinations," and also "give due deference to the district court's application of the guidelines to the facts."  United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002) (internal quotations omitted).

[15]Contrary to the government's contention, we conclude that Stahlman properly preserved his challenge to the obstruction enhancement by including it in his objections to the PSR and by objecting to his sentence's procedural reasonableness after the district court pronounced his sentence.

Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993).  A "material" matter

under § 3C1.1 is "evidence, fact, statement, or information that, if believed, would

tend to influence or affect the issue under determination."  U.S.S.G. § 3C1.1,

comment. n.6.

In Dunnigan, the Supreme Court explained that "not every accused who

testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for

committing perjury," noting that not all testimony that is inaccurate is perjurious.

See Dunnigan, 507 U.S. at 95, 113 S. Ct. at 1117.  The Supreme Court therefore

explained that when a defendant objects to an obstruction enhancement resulting

from his trial testimony, "a district court must review the evidence and make

independent findings necessary to establish a willful impediment to or obstruction

of justice, or an attempt to do the same."  Id.  The Supreme Court further stated

that, "[w]hen doing so, it is preferable for a district court to address each element

of the alleged perjury in a separate and clear finding."  Id.  However, the Supreme

Court also stated that a district court's determination that the obstruction

enhancement applies is sufficient as long as "the court makes a finding of an

obstruction of, or impediment to, justice that encompasses all of the factual

predicates for a finding of perjury."  Id.; see also United States v. Singh, 291 F.3d

756, 763 (11th Cir. 2002) ("[A] general finding that an enhancement is warranted

52

suffices if it encompasses all of the factual predicates necessary for a perjury finding." (internal quotations omitted)).

Here, as an initial matter, we disagree with Stahlman's contention that there is no meaningful basis for appellate review. Certainly, Stahlman is correct that the district court did not, at the sentencing hearing, specifically "address each element of the alleged perjury in a separate and clear finding." Dunnigan, 507 U.S. at 95, 113 S. Ct. at 1117. But the district court did explicitly "adopt[] the position of the Probation Office as stated in the [PSR] addendum," which lays out the factual basis for applying the obstruction enhancement. Specifically, the PSR Addendum explains:

> The defendant, under oath, made materially false statements. According to the jury trial transcript, defense counsel asked Stahlman, "Have you ever had sexual thoughts about children?" Stahlman responded, "No, I have not." However, during the government's proffered cross-examination, the government questioned Stahlman about an author on a website known as asstr.org. Stahlman explained that asstr is a collection of erotic fantasies and erotic stories uploaded by anonymous authors. When asked what people do on asstr.org, he said, "They post sexually explicit stories generally engaging minors." He then acknowledged having read several of these sexually explicit stories. The government then asked, "Mr. Stahlman, do you masturbate to those stories?" Stahlman responded, "Yes." Based on this information, it appears the defendant was not honest to the jury as this latter statement contradicts his statement that he has never had sexual thoughts about children.

Additionally, in pronouncing its sentence, the district court clearly indicated that it did not find Stahlman's trial testimony credible and that it was holding

53

Stahlman "accountable for what [he said] at trial" because "what [he said] at trial simply wasn't true." While it may have been "preferable" for the district court to provide a more detailed discussion of its reasons for applying the obstruction enhancement at sentencing, we are not left without any meaningful basis for review here. See Dunnigan, 507 U.S. at 95, 113 S. Ct. at 1117; Singh, 291 F.3d at 763.

We also discern no clear error in the factual findings underlying the obstruction enhancement or any error in the district court's application of the guidelines to those facts. The district court's findings (as outlined in the PSR Addendum) support a finding of perjury. To show perjury, "(1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of mistake, confusion, or faulty memory." United States v. Ellisor, 522 F.3d 1255, 1277 n.34 (11th Cir. 2008) (internal quotations omitted). Here, Stahlman's testimony that he never had sexual thoughts about children (1) was made under oath at trial and (2) undoubtedly was material to whether Stahlman actually intended to engage in sexual activity with an 11-year-old. See id.; U.S.S.G. § 3C1.1, comment. n.6.

Stahlman disputes that his testimony about his lack of sexual interest in children was false and thus, likewise, disputes that it was given with the willful

54

intent to provide false testimony.  But given Stahlman's later proffered testimony that he had masturbated to erotic stories about adults engaging in sex with children, it was not clearly erroneous for the district court to find that Stahlman's earlier testimony before the jury was not truthful.  Stahlman asserts that the Asstr.org stories were mere fantasies that do not reflect his real-life desires.  Importantly though, these were not stories describing adults engaged in fantasy role-playing, in which one adult was portraying a minor, but rather were stories describing sexual encounters between adults and children.  In other words, the Asstr.org stories may have been fantasies, but they are fantasies about children, not adults acting as children, and Stahlman's interest in those stories belies his statement that he never had sexual thoughts about children.  In this context, too, we "accord great deference to the district court's credibility determinations," and here the district court explicitly found Stahlman's testimony to be "implausible" and "incredible." Singh, 291 F.3d at 763 (internal quotations omitted).

In short, the district court did not err in finding Stahlman had perjured himself at trial and, having so found, properly applied the two-level obstruction of justice enhancement under § 3C1.1.  See U.S.S.G. § 3C1.1 & comment. n.4(B); Dunnigan, 507 U.S. at 94-95, 113 S. Ct. at 1116-17.  We therefore affirm Stahlman's 292-month sentence.

55

## VI. MOTION FOR NEW TRIAL

Stahlman's final argument is that the district court erred in denying his "Motion for New Trial, Request for an Indicative Ruling, and Prayer for an Evidentiary Hearing."[16]  Specifically, Stahlman frames the issue as both a Brady claim and a Rule 16 discovery violation.

We agree with the government's concession that, because Stahlman's new trial motion was based on the non-disclosure of Agent Hyre's prior discipline, the district court erred by using the "against the weight of the evidence" standard.  But we also agree with the government that Stahlman's claims fail under the correct legal standards and that any error was harmless.

### A.    Brady Claim

To establish a Brady violation, the defendant must show: (1) the government possessed evidence that was favorable to him; (2) he did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) if the evidence had been disclosed, there is a reasonable probability that the outcome of his trial would have been different.  United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002).

---

[16]We review for an abuse of discretion the denial of a motion for new trial (1) based on newly discovered evidence, United States v. Barsoum, 763 F.3d 1321, 1341 (11th Cir. 2014), and (2) based on an alleged Brady violation, United States v. Naranjo, 634 F.3d 1198, 1206 (11th Cir. 2011).

56

Evidence is "favorable" under <u>Brady</u> if it is exculpatory or impeaching. <u>See</u> <u>United States v. Naranjo</u>, 634 F.3d 1198, 1212 (11th Cir. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>United States v. Hano</u>, 922 F.3d 1272, 1292 (11th Cir. 2019) (internal quotations omitted).

Stahlman contends that Agent Hyre's prior discipline constitutes favorable evidence under <u>Brady</u> because it is impeachment evidence that could have undermined the jury's confidence in Agent Hyre's testimony. The government disagrees, arguing, <u>inter alia</u>, that: (1) the November 2, 2017 notice indicates that Agent Hyre admitted his policy violation during the disciplinary investigation, and "[t]here were no allegations or findings of lack of candor or untruthfulness on his part"; (2) that Stahlman failed to establish any inconsistency in Agent Hyre's trial testimony and his assertions to the FBI investigators; and (3) Stahlman failed to show evidence of the suspension was material under <u>Brady</u>.

We need not delve into those matters because, even assuming Agent Hyre's prior discipline does carry some impeachment value, we see no reasonable probability that, had this evidence been disclosed, the outcome of Stahlman's trial would have been different. <u>Vallejo</u>, 297 F.3d at 1164. As we explained above in discussing Stahlman's motions for judgment of acquittal, ample evidence— primarily in the form of Stahlman's own emails to Agent Hyre graphically

57

describing the sex acts he wished to perform on the 11-year-old daughter—supported Stahlman's conviction in this case.  None of the content of Stahlman's online communications with Agent Hyre was disputed.  The only contested issue was whether Stahlman intended to entice a minor or whether he, as he testified, believed he was only acting out a sexual role-playing fantatsy with consenting adults.  We simply fail to see how evidence of Agent Hyre's prior discipline, which was wholly unrelated to this case and had but little, if any, bearing on the credibility of his testimony, would have tipped the balance in this case so significantly as to undermine our confidence in the jury's guilty verdict.  Hano, 922 F.3d at 1292.  The district court's error in failing to properly analyze Stahlman's Brady claim was therefore harmless.  See United States v. Hernandez, 433 F.3d 1328, 1335-37 (11th Cir. 2005) (concluding that the district court's error in employing the wrong legal standard to evaluate a motion for new trial was harmless).

## B.    Rule 16 Violation

Under Federal Rule of Criminal Procedure 16, the government must disclose to the defendant any evidence that "is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i).  This Court will not reverse a conviction based on a Rule 16 discovery violation unless the defendant demonstrates that the violation prejudiced his substantial rights.  United States v. Chastain, 198 F.3d 1338, 1348

58

(11th Cir. 1999); United States v. Camargo-Vergara, 57 F.3d 993, 998 (11th Cir. 1995).

To obtain a new trial based on newly discovered evidence, a defendant must show that: (1) the evidence was discovered after trial; (2) his failure to discover the evidence was not due to a lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a different result. United States v. Barsoum, 763 F.3d 1321, 1341 (11th Cir. 2014). This Court has repeatedly stated that motions for new trial based on newly discovered evidence are "highly disfavored" and should be granted only with "great caution." See United States v. Scrushy, 721 F.3d 1288, 1304 (11th Cir. 2013); United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006); United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003).

Stahlman's Rule 16 violation/newly discovered evidence claim fails for much the same reasons as his Brady claim. As explained above, Agent Hyre's prior discipline is, at best, merely impeaching evidence, as it has no bearing on Stahlman's guilt or innocence in this case. See Barsoum, 763 F.3d at 1341. And, as also explained above, given the ample evidence supporting Stahlman's guilt, evidence of Agent Hyre's prior discipline would not probably produce a different outcome. See id. In short, we see no reason here to throw "great caution" to the

59

wind and take the "highly disfavored" step of granting Stahlman a new trial on this basis.  See Scrushy, 721 F.3d at 1304.  Again, the district court's error in applying the wrong standard to Stahlman's claim was harmless.

Given our conclusions regarding the merits of Stahlman's motion for new trial, we also conclude that the district court did not err in declining to conduct discovery, hold an evidentiary hearing, or hold oral argument on Stahlman's motion.  See Jernigan, 341 F.3d at 1289 (indicating that a district court does not err in denying an evidentiary hearing on a motion for new trial where the defendant's claim was properly denied).

## VII. CONCLUSION

For the foregoing reasons, we affirm Stahlman's § 2422 child enticement conviction and 292-month sentence.

**AFFIRMED.**